OPINION *Page 2 
{¶ 1} Defendant-Appellant appeals his convictions of one count of rape and two counts of gross sexual imposition. The State of Ohio is Plaintiff-Appellee.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On February 2, 2008, the Licking County grand jury indicted Appellant on two counts of rape and two counts of gross sexual imposition. Specifically, in count one, Appellant was charged with rape in violation of R.C. 2907.02, for engaging in sexual conduct with P.T., who was not his spouse and who was under the age of thirteen at the time of the offense, which was between November 14, 1999, and November 14, 2000. In count two, Appellant was charged with one count of rape in violation of R.C. 2907.02 for engaging in sexual conduct with P.T., who was not his spouse and who was under the age of thirteen at the time of the offense, between the times of November 14, 1999, and November 14, 2003.
 {¶ 3} In count three, Appellant was charged with gross sexual imposition in violation of R.C. 2907.05, for having sexual contact with S.L., a minor who was under thirteen years of age, between the times of October 4, 1996, and February 28, 1997. In count four, Appellant was charged with gross sexual imposition for having sexual contact with P.T. between the times of October 4, 1996, and February 28, 1997.
 {¶ 4} On February 12, 2007, Appellant pled not guilty to all counts. On November 27, 2007, Appellant exercised his right to a jury trial. Prior to trial, several legal motions were argued, including a motion in limine to preclude the State from introducing photographs of P.T. and S.L. when they were seven and eight years old, respectively. The trial court denied the motion. Defense counsel also made a motion to *Page 3 
sever count three, involving S.L., which the court denied, finding that the facts and circumstances of the crimes would overlap and should be presented together.
 {¶ 5} At trial, the State's first witness was P.T., who was 18 years old at the time of testifying. P.T. testified that she was born on November 14, 1989, and that she currently lives in Colorado with her mother. She stated that when she was four years old, she and her mother lived in Coshocton with Appellant, who was her stepfather at the time. She stated that he began touching her inappropriately at that time. According to P.T., he would touch her vagina with his hands. She stated that this conduct happened repeatedly throughout the years.
 {¶ 6} When P.T. was approximately ten-years old, the conduct escalated to sexual intercourse. At that time, the family had moved from Coshocton to Newark, Ohio. P.T. testified that one time he made her have vaginal intercourse before she could go outside to play with her friends. P.T. specifically recalled another time when she was seven or eight years old and was at Appellant's parents' house in Granville, Ohio, when Appellant took her into an upstairs bathroom after telling her that she was in trouble, and he bent P.T. over the toilet and stuck his fingers inside her vagina.
 {¶ 7} P.T. also testified that when the family had foster kids living with them, Appellant would have P.T. sleep in his bed with her and he would touch her vagina and put his fingers inside of her vagina. She testified as to the foster kids' names and verified that S.L. was one of the foster kids who lived with them for a short while.
 {¶ 8} According to P.T., she did not tell her mother or anyone about what had happened because she was embarrassed and did not want anyone to "end up hurt." She stated that the abuse stopped when she was approximately thirteen years old and *Page 4 
she ran away from home. She eventually reported the abuse in 2006 when she was taken for a psychiatric evaluation at a mental health facility.
 {¶ 9} P.T.'s mother, Letitia, testified that she began dating Appellant in 1994 and that they married in 1996. She stated that they moved to Licking County in 1996 and that P.T. moved with them. When they lived at 375 Eastern Avenue in Newark, Ohio, they had foster children living with them, including S.L. They remained at that address from August 1996 until August 1997. When they moved to their next address, they no longer had foster kids living with them.
 {¶ 10} When shown a photograph of P.T. and S.L., Letitia confirmed that their ages at that time were seven and eight, respectively, and that the photograph was taken when S.L. was a foster child with them.
 {¶ 11} Letitia testified that divorce proceedings were instituted in 2005 as a result of a domestic violence incident where she and Appellant got into a fight and she was arrested. He served her with divorce papers shortly thereafter.
 {¶ 12} Detective Ken Ballantine, a twenty-nine-year veteran of the Newark Police Department, testified that he received a referral about this case and that he interviewed P.T., Letitia, and S.L. He confirmed that S.L. lived with Appellant's family at 375 Eastern Avenue in Newark.
 {¶ 13} S.L. next testified that she is currently 19 years old and that she was born on June 1, 1988. She stated that she was a foster child who lived with Appellant and Letitia approximately 10 to 11 years ago and that she also lived with P.T. at the time.
 {¶ 14} She testified that on two separate occasions she saw Appellant in the laundry room of the house with P.T. On those two occasions, S.L. observed P.T.'s *Page 5 
pants down and Appellant's hand in P.T.'s undewear, but their backs were to her, so she could not see exactly what Appellant was doing with his hand.
 {¶ 15} Regarding Appellant's conduct towards S.L., she testified that when Letitia was gone, Appellant took her into her bedroom and pulled her pants down, laid her on the ground and rubbed her vaginal area overtop of her underwear. She testified that this happened approximately five different times. She stated that she finally told her mother about the abuse approximately two years prior to trial.
 {¶ 16} After trial, the jury found Appellant not guilty of count one of the indictment, but found him guilty of counts two, three, and four. Appellant was sentenced to nine years in prison for his crimes.
 {¶ 17} Appellant now raises five Assignments of Error:
 {¶ 18} "I. THE TRIAL COURT DID ERR BY FAILING TO DISMISS COUNTS THREE AND FOUR OF THE INDICTMENT WHEN THE STATE FAILED TO ESTABLISH WITH SUFFICIENT PARTICULARITY THAT THE OFFENSE OCCURRED WITHIN THE TIME FRAME STATED IN THE INDICTMENT.
 {¶ 19} "II. THE TRIAL COURT DID ERR BY ALLOWING THE STATE TO ADMIT EVIDENCE OF THE DEFENDANT'S PRIOR BAD ACTS.
 {¶ 20} "III. THE TRIAL COURT DID ERR WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 21} "IV. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL. *Page 6 
 {¶ 22} "V. THE TRIAL COURT DID ERR BY ALLOWING THE STATE TO INTRODUCE IRRELEVANT AND PREJUDICIAL PHOTOGRAPHS."
 I. {¶ 23} In his first assignment of error, Appellant claims that the trial court erred by failing to dismiss counts three and four of the indictment because the State failed to establish with sufficient particularity that the offense occurred within the time frame stated in the indictment. Appellant was indicted in counts three and four on two counts of gross sexual imposition for having sexual contact with S.L. and P.T., respectively, between the dates of October 4, 1996, and February 28, 1997.
 {¶ 24} "Ordinarily, precise times and dates are not essential elements of offenses. Thus, the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges. A certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not per se impermissible or necessarily fatal to a prosecution." State v. Barnecut (1988),44 Ohio App.3d 149, 151, 542 N.E.2d 353 quoting State v. Sellards (1985),17 Ohio St.3d 169, 171, 478 N.E.2d 781, 784.
 {¶ 25} The Sellards court stated that the absence of specifics must truly prejudice the defendant's ability to fairly defend himself.Sellards, supra, at 172, 478 N.E.2d at 784. "Absent material detriment to the preparation of a defense, the omission of specific dates and times is without prejudice, and without constitutional consequence."Barnecut, supra, citing Sellards, supra, at 172, 478 N.E.2d at 785. If such is not fatal to an indictment, it follows that impreciseness and inexactitude of the evidence at trial is not "per se impermissible or necessarily fatal to a prosecution." State v. Robinette (Feb. *Page 7 
27, 1987), 5th Dist. No. CA-652, unreported, at 6,1987 WL 7153. The question in such cases is whether the inexactitude of temporal information truly prejudices the accused's ability to fairly defend himself. Sellards, supra; State v. Gingell (1982),7 Ohio App.3d 364, 368, 455 N.E.2d 1066, 1071; State v. Kinney (1987),35 Ohio App.3d 84, 519 N.E.2d 1386.
 {¶ 26} The question as to whether prejudice pervades cases of child abuse with a victim-witness who, due to tender years, does not have the temporal memory of an adult and has problems remembering exact times. As the First District stated in Gingell:
 {¶ 27} "The real problem arises in cases, like the present, where the state is simply unable to comply with times and dates more specific than those found in the instant indictment. With all the best will in the world, information more specific and particular about when the incident occurred cannot be secured. * * *" 7 Ohio App.3d at 368,455 N.E.2d at 1071.
 {¶ 28} This court has also addressed this specific issue:
 {¶ 29} "We note that these particular cases often make it more difficult to ascertain specific dates. The victims are young children who may reasonably be unable to remember exact times and dates of psychologically traumatic sexual abuses. This is especially true where the crimes involve several instances of abuse spread out over an extended period of time. State v. Humfleet (Sept. 9, 1985), 5th Dist.. No. CA 84-04-031, unreported, at 15,1985 WL 7728. * * * An allowance for reasonableness and inexactitude must be made for such cases considering the circumstances." State v.Barnecut, supra, internal citation omitted. See, also, State v.D.B.S. (1985), 216 Mont. 234, 700 P.2d 630, 634 (young children are not "governed by the clock and calendar as *Page 8 
adults are" and allowances must be made for the inexactitude of children's memories, or else the defendant becomes virtually immune from prosecution).
 {¶ 30} Based on the facts before us, we cannot say that the trial court erred by not dismissing counts three and four. The time frame in the indictment spans approximately five months. There was testimony that P.T. was seven and S.L. was eight at the times when Appellant committed the instances of gross sexual imposition. The contact occurred when S.L. was a foster child living with Appellant. Letitia testified that S.L. lived with them in late 1996 and early 1997.
 {¶ 31} Appellant's defense was that the crimes never took place, thus making the case a credibility assessment for the jury. Appellant's counsel did not argue that Appellant was never with these girls; he simply stated that they were making the allegations up for revenge because Appellant divorced Letitia after a domestic violence incident in 2005. The evidence was consistent with establishing that the offenses occurred within the timeframes provided in the indictment and bill of particulars. See Barnecut, supra, at 153, internal citations omitted.
 {¶ 32} Accordingly, Appellant's first assignment of error is overruled.
 II. {¶ 33} In his second assignment of error, Appellant argues that the trial court erred by permitting the State to introduce evidence of Appellant's "prior bad acts." Specifically, Appellant claims that the State should not have been allowed to introduce other acts testimony that Appellant began molesting P.T. when P.T. was four years old.
 {¶ 34} Extrinsic acts may not typically be used to suggest that the accused has the propensity to act in a certain manner. Evid. R. 404;State v. Smith (1990), *Page 9 49 Ohio St.3d 137, 140, 551 N.E.2d 190. However, there are exceptions. Evid. R. 404(B) allows such evidence where it is offered to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Additionally, R.C. 2945.59 provides, "In any criminal case in which the defendant's motive or intent * * * is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 35} If a court finds that evidence was inadmissible under Evid. R. 404(B), the court can still determine that the error was harmless. The Supreme Court of Ohio has held that error is harmless if "there is no reasonable possibility that the evidence may have contributed to the accused's conviction." State v. Drew, 10th Dist. No. 07AP-467, 2008-Ohio-2797. at ¶ 31, quoting State v. Bayless (1976),48 Ohio St.2d 73, 357 N.E.2d 1035, paragraph seven of the syllabus. Moreover, it is appropriate to find error harmless where there is "either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction." State v. Ferguson (1983),5 Ohio St.3d 160, 166, fn. 5, 450 N.E.2d 265. "When considering whether error is harmless, our judgment is based on our own reading of the record and on what we determine is the probable impact the statement had on the jury." State v. Drew, supra, citing See State v. Kidder (1987),32 Ohio St.3d 279, 284, 513 N.E.2d 311.
 {¶ 36} Appellee suggests that the acts complained of by Appellant were closely related in nature, time, and place to the indicted conduct, and thus relevant to the *Page 10 
underlying charges. However, Appellee does not rely on any part of the record to support this argument. The record demonstrates the following colloquy between the prosecutor and the victim with respect to the prior bad acts evidence:
 {¶ 37} "Q [Mr. Huston]: Did you have specific issues with your father at the age of four, your stepfather?
 {¶ 38} "A [P.T.]: Yeah.
 {¶ 39} "Q: Can you tell the jury about that.
 {¶ 40} "A: Well, like he would touch me inappropriately and stuff.
 {¶ 41} "Q: I'm going to have to ask you, I know this isn't fun —
 {¶ 42} "MR. SANDERSON: Objection. May we approach?
 {¶ 43} "THE COURT: Please do.
 {¶ 44} "(WHEREUPON, A DISCUSSION WAS HELD AT THE BENCH OFF THE RECORD AND OUT OF THE HEARING OF THE JURY.)
 {¶ 45} "THE COURT: Thank you. Please proceed.
 {¶ 46} "MR. SANDERSON: Your Honor, we move to strike the last answer.
 {¶ 47} "MR. HUSTON: Your Honor, I would ask for a little liberty to develop a line of questioning.
 {¶ 48} "THE COURT: I'll overrule the motion to strike. Please proceed, Mr. Huston.
 {¶ 49} "BY MR. HUSTON:
 {¶ 50} "Q: [PT], at the age of four, did you have issues with your stepfather as opposed to the inappropriate touching?
 {¶ 51} "A: No, I don't think so. *Page 11 
 {¶ 52} "Q: You said he touched me inappropriately.
 {¶ 53} "A: Um-hmm.
 {¶ 54} "Q: Okay. What does that mean? What does that consist of? What did he do?
 {¶ 55} "A: He would touch my vagina.
 {¶ 56} "Q: Okay. With what? What would he use to touch it?
 {¶ 57} "A: His hands.
 {¶ 58} "Q: Did this happen just on one occasion or more than once?
 {¶ 59} "A: More than once.
 {¶ 60} "Q: And you specifically remember this.
 {¶ 61} "A: Yes, I do.
 {¶ 62} "Q: Do you have any idea why or how you're able to remember at that tender age?
 {¶ 63} "A: It was — I don't know. I think it was mainly because like my mom — like me and her, like I remember like all the things that we would do like church, and the friends that I had, and like coloring books and the toys that I would play with."
 {¶ 64} Without linking this testimony to one of the enumerated reasons set forth in Evid. R. 404(B), (i.e., proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident), the prosecutor has failed to establish that such evidence was properly admitted. Testimony regarding unindicted conduct that occurred over three years prior to the sexual conduct at issue in the indictment is not closely related in nature, time, and place to the offenses with which the accused was charged here. Without a proper development on the record of his reasons *Page 12 
for introducing such evidence, Appellee has failed to establish, either through the record or in its brief, how these prior acts were related to the indicted conducted.
 {¶ 65} Though we find that the evidence was inappropriately admitted, we do not find that the admission of this evidence unfairly prejudiced Appellant; the error was harmless. As previously stated, the admission of prior bad acts is deemed harmless unless there is some reasonable probability the evidence contributed to the accused's conviction,City of Columbus v. Taylor (1988), 39 Ohio St.3d 162, 529 N.E.2d 1382.
 {¶ 66} Because fairness is subjective, the determination whether evidence is unfairly prejudicial is left to the sound discretion of the trial court and will be overturned only if the discretion is abused.State v. Robb (2000), 88 Ohio St.3d 59, 68, 723 N.E.2d 1019. "As a legal term, `prejudice' is simply "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (8th Ed. 1999) 1218. Thus, it is fair to say that all relevant evidence is prejudicial. That is, evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case. Accordingly, the rules of evidence do not attempt to bar all prejudicial evidence — to do so would make reaching any result extremely difficult. Rather, only evidence that is unfairly prejudicial is excludable." State v. Crotts (2004), 104 Ohio St.3d 432, at ¶ 23,820 N.E.2d 302.
 {¶ 67} "`Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice, anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word "unfair." Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the *Page 13 
evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect.'" Id. at ¶ 24 quoting Oberlin v. Akron Gen. Med. Ctr. (2001),91 Ohio St.3d 169, 172, 743 N.E.2d 890, quoting Weissenberger's Ohio Evidence (2000) 85-87, Section 403.3.
 {¶ 68} We have reviewed the record, and we find there is no reasonable probability this evidence actually contributed to Appellant's conviction. Initially, we would note that the jury acquitted Appellant of one count of rape against P.T., who was the person who testified as to being molested when she was four years old. It is reasonable to infer that the jury was not swayed by emotion and sympathy, having acquitted Appellant of one of the most serious charges against him. Moreover, regarding the gross sexual imposition charges, S.L. was an eyewitness to the count against P.T. and S.L.'s count was not connected in any way to the prior bad acts evidence. The trial instructed the jury, "[t]he charges set forth in each count in the indictment constitute separate and distinct mattes [sic]. You must consider each count and the evidence applicable to each count separately and you must state your findings as to each count uninfluenced by your verdict as to any other count.
 {¶ 69} "* * * *
 {¶ 70} "You must not be influenced by any consideration of sympathy or prejudice. It is your duty to carefully weigh the evidence, to decide the disputed questions of fact, to apply the instructions of the Court to your findings and to render your verdict accordingly."
 {¶ 71} Based on the foregoing, we do not find that Appellant was unfairly prejudiced by the improperly admitted evidence. *Page 14 
 {¶ 72} Appellant's second assignment of error is overruled.
 III. {¶ 73} In his third assignment of error, Appellant argues that there was insufficient evidence to support his convictions and that his convictions were against the manifest weight of the evidence.
 {¶ 74} When reviewing a claim of sufficiency of the evidence, an appellate court's role is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Contrary to a manifest weight argument, a sufficiency analysis raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983),20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 75} Conversely, when analyzing a manifest weight claim, this court sits as a "thirteenth juror" and in reviewing the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 548, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. *Page 15 
 {¶ 76} In order to convict Appellant of rape, the State needed to prove that Appellant engaged in sexual conduct with P.T. while she was under the age of 13. In order to convict Appellant of gross sexual imposition, the State needed to prove that Appellant had sexual contact with P.T. and S.L, while they were under 13 years of age.[1]
 {¶ 77} The evidence, as presented at trial, was sufficient to support Appellant's convictions. As the Tenth District held in State v.Kring, 10th Dist. No. 07AP-610, 2008-Ohio-3290, at ¶ 42 "[t]here is no requirement, statutory or otherwise, that a rape victim's testimony must be corroborated as a condition precedent to conviction." Rather, "the testimony of a rape victim, if believed, is sufficient to support each element of rape." (Internal citations omitted).
 {¶ 78} P.T. testified that she was born on November 14, 1989. When P.T. was approximately ten-years old, the family was living in Newark, Ohio and she testified that the sexual contact escalated to sexual intercourse. P.T. testified that one time when she was approximately 10 years old, Appellant made her have vaginal intercourse before she could go outside to play with her friends.
 {¶ 79} P.T. also testified that when the family had foster kids living with them, Appellant would have P.T. sleep in his bed with her and he would touch her vagina and put his fingers inside of her vagina. She testified as to the foster kids' names and verified that S.L. was one of the foster kids who lived with them for a short while. *Page 16 
 {¶ 80} S.L. testified that she is currently 19 years old and that she was born on June 1, 1988. She stated that she was a foster child who lived with Appellant and Letitia approximately 10 to 11 years ago and that she also lived with P.T. at the time.
 {¶ 81} She testified that on two separate occasions she saw Appellant in the laundry room of the house with P.T. On those two occasions, S.L. observed P.T.'s pants down and Appellant's hand in P.T.'s undewear, but their backs were to her, so she could not see exactly what Appellant was doing with his hand.
 {¶ 82} Regarding Appellant's conduct towards S.L., she testified that when Letitia was gone, Appellant took S.L. into her bedroom and pulled her pants down, laid her on the ground and rubbed her vaginal area overtop over her underwear. She testified that this happened approximately five different times. She stated that she finally told her mother about the abuse approximately two years prior to trial.
 {¶ 83} P.T.'s mother, Letitia, testified that she began dating Appellant in 1994 and that they married in 1996. She stated that they moved to Licking County in 1996 and that P.T. moved with them. When they lived at 375 Eastern Avenue in Newark, Ohio, they had foster children living with them, including S.L. They remained at that address from August 1996 until August 1997. When they moved to their next address, they no longer had foster kids living with them.
 {¶ 84} When shown a photograph of P.T. and S.L., she confirmed that their ages at that time were seven and eight, respectively, and that the photograph was taken when S.L. was a foster child with them.
 {¶ 85} Based on this testimony, there was sufficient evidence to support the convictions and the convictions were not against the weight of the evidence. *Page 17 
 {¶ 86} Accordingly, Appellant's third assignment of error is overruled.
 IV. {¶ 87} In Appellant's fourth assignment of error, he claims that he was denied the effective assistance of counsel.
 {¶ 88} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that his trial counsel acted incompetently. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052. In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, quoting Michel v. Louisiana (1955), 350 U.S. 91, 101, 76 S.Ct. 158,164.
 {¶ 89} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland,466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." Id. at 690.
 {¶ 90} Even if a defendant shows that his counsel was incompetent, the defendant must then satisfy the second prong of the Strickland test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."Strickland, 466 U.S. at 694. *Page 18 
 {¶ 91} Appellant first asserts that counsel was ineffective for failing to renew his motion to sever count three, and that because he failed to do so, he did not preserve the error.
 {¶ 92} It is apparent from reading the facts that joinder in this case was proper. Offenses are properly joined in a single indictment under Crim. R. 8 when they "* * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan or are part of a course of criminal conduct." As such, Appellant was not prejudiced by counsel's failure to repeat his objection to the joinder, because joinder was proper.
 {¶ 93} Moreover, we have already determined that the Appellant was not prejudiced by the admission of other acts evidence, as there was substantial evidence on which to convict Appellant and there is no evidence, given the jury's acquittal on the most serious charge, that the jury was swayed by sympathy or passion in making its determination. As we previously stated, the trial court instructed the jury, "[t]he charges set forth in each count in the indictment constitute separate and distinct mattes [sic]. You must consider each count and the evidence applicable to each count separately and you must state your findings as to each count uninfluenced by your verdict as to any other count.
 {¶ 94} "* * * *
 {¶ 95} "You must not be influenced by any consideration of sympathy or prejudice. It is your duty to carefully weigh the evidence, to decide the disputed *Page 19 
questions of fact, to apply the instructions of the Court to your findings and to render your verdict accordingly."
 {¶ 96} Accordingly, Appellant's fourth assignment of error is overruled.
 V. {¶ 97} In his fifth assignment of error, Appellant argues that it was error for the trial court to allow the state to introduce photographs of P.T. and S.L. depicting them at ages seven and eight, respectively.[2]
 {¶ 98} Decisions on the admissibility of photographs are "left to the sound discretion of the trial court." State v. Slagle (1992),65 Ohio St.3d 597, 601, 605 N.E.2d 916. Ohio Evidence Rule 403 requires a trial court to weigh the danger of unfair prejudice against its probative value. Thus, the standard of review for the admission of evidence is an abuse of discretion. State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343; State v. Bey (1999), 85 Ohio St.3d 487, 490, 709 N.E.2d 484. In order to find an abuse of discretion, we must find more than an error of law or judgment. An abuse of discretion demonstrates that the court's attitude was unreasonable, arbitrary, or unconscionable. State v.Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 99} The Seventh District, in State v. Davis, 7th
Dist. No. 05 MA 3, 2007-Ohio-1397, confronted a similar issue regarding the admissibility of photographs of a young victim in a rape case. InDavis, the defendant argued that the trial court erred when it admitted the rape victim's fifth grade school picture because it lacked probative value and served only to inflame the passions and prejudices of the jury. During Davis's trial, the victim was sixteen years old and in the eleventh grade. She was ten to eleven years *Page 20 
old at the time of the offenses. At trial, the victim's mother described that the photograph accurately depicted what the victim looked liked in the fifth grade. The Seventh District determined that "the photograph was probative and there is nothing prejudicial in allowing the jury to see just what a ten or eleven year old girl looked like."Davis, at ¶ 39. The Davis court found that it was not an abuse of discretion to admit the photograph.
 {¶ 100} Similarly in the present case, the two photographs admitted were relevant and were not cumulative. The State was required to prove the age of P.T. and S.L. at the time of the offenses. P.T.'s mother, Letitia testified that the girls were seven and eight years old in the two photographs and that the photographs were taken when S.L. was a foster child living with them in late 1996. The photographs are probative to show that the victims were under the age of thirteen at the time of the offenses.
 {¶ 101} For the foregoing reasons, we overrule Appellant's assignments of error. The judgment of the Licking County Court of Common Pleas is affirmed.
Delaney, J. Gwin, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] We would note, as an initial matter, that neither the Appellant or Appellee has presented any argument based on the facts as to what evidence did or did not constitute sufficient evidence to support Appellant's convictions. Pursuant to App. R. 16, the argument sections of each party must include "[a]n argument containing the contentions of the [party] with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which [the party] relies. The argument may be preceded by a summary." There is no reference to parts of the record upon which the parties' rely to support their arguments.
[2] Neither Appellant or Appellee cite any case law supporting their argument as to this Assignment of Error. *Page 1