OPINION
{¶ 1} This is an appeal by defendant-appellant, Charles E. Dunkle, from a judgment of the Franklin County Court of Common Pleas following a jury trial in which appellant was found guilty of aggravated murder.
 {¶ 2} On January 18, 2007, appellant was indicted on one count of aggravated murder, in violation of R.C. 2903.01. The indictment arose out of the beating death of Howard Hough on January 10, 2007. *Page 2 
 {¶ 3} The matter came for trial before a jury beginning April 15, 2008. The state presented the following evidence during its case-in-chief. In January of 2007, Paul Fugate and his fiancée, Heather Moore, were residing at 497 East Morrill Avenue. Ronnie McWhorter ("McWhorter") and his wife Angel McWhorter ("Angel") resided in an adjacent duplex at 499 East Morrill Avenue. McWhorter's mother, Patricia McWhorter ("Patricia"), also resided at McWhorter's duplex for a period of time. Patricia dated Howard "Buddy" Hough.
 {¶ 4} In the early evening of January 10, 2007, a group of individuals, including appellant and McWhorter's sister, Michelle McWhorter ("Michelle"), were playing cards at McWhorter's residence. Michelle and appellant were dating at the time. That evening, Patricia arrived at the residence to remove some of her items, and an argument ensued between McWhorter and his mother. Heather, upon hearing the noise next door, walked over to the McWhorter residence and also got into an argument with Patricia; at one point, Heather pushed Patricia, and the two women eventually went outside where they continued to argue.
 {¶ 5} Fugate heard the arguing next door and came over to the McWhorter residence. Fugate then walked across the street to a neighbor's house to ask for a cigarette, and yelled out that he had just seen Buddy. McWhorter and Fugate then ran around the side of the house into an alley. The two men returned approximately 10 to 15 minutes later. According to the testimony of Angel, the men related that Fugate had pushed Buddy to the ground, and McWhorter then proceeded to "kick the living crap out of him." (Tr. Vol. III, 369.) The men left Buddy lying in a nearby alley. Fugate testified that Buddy appeared to be "knocked out" at the time. (Tr. Vol. II, 245.) *Page 3 
 {¶ 6} Heather testified that, when appellant heard about the incident, he told McWhorter: "He can't just leave him laying there. You got to go finish it. You have got to go finish it. He will go to the police. We have got to go finish it." (Tr. Vol. II, 306.) McWhorter, however, was "torn," stating: "No, I am not going to go. Yes, I'm going to go." (Tr. Vol. II, 306.)
 {¶ 7} A short time later, Heather, Angel, Michelle and a neighbor named Rita walked to a nearby store at the corner of Parsons and Morrill Avenues. On their return from the store, they walked by the alley and observed Buddy near a stump. According to Michelle, Buddy was "sitting up like he was dazed." (Tr. Vol. III, 429.)
 {¶ 8} The women returned to the McWhorter residence and told the others that Buddy was "sitting up and he was okay." (Tr. Vol. III, 430.) Heather testified that the men were "still talking about going back at nine o'clock." (Tr. Vol. II, 309.) Michelle testified that appellant's reaction was that "they had to go finish the job so my brother didn't go to jail." (Tr. Vol. III, 430.) McWhorter was debating whether he should go. The women told him not to go back, but appellant told McWhorter that "he could get away with it." (Tr. Vol. III, 431.)
 {¶ 9} McWhorter and appellant eventually put on coats and gloves and walked out the door. The men were gone approximately 20 to 30 minutes. When they returned, McWhorter was "kind of calm," but appellant "was hyped up." (Tr. Vol. II, 310.) Heather testified that she and Michelle were in the kitchen with appellant when he told them he had "picked up the board and couldn't stop hitting Buddy." (Tr. Vol. II, 311.) Michelle also testified that appellant "said he couldn't stop hitting him in the head with the board." (Tr. Vol. III, 432.) Heather and Michelle then walked out of the kitchen. *Page 4 
 {¶ 10} Police officers were called to the crime scene that evening, where they observed a man lying on the ground. The officers discovered a wooden board nearby. Buddy was still alive when medical personnel arrived and transported him to a hospital. He was pronounced dead the following day (January 11, 2007).
 {¶ 11} On the night of the incident, police officers came to the McWhorter residence and interviewed various individuals. At trial, Angel admitted initially telling the officers that her husband had not left the house that evening, and she acknowledged helping dispose of the pants he was wearing that night. Michelle also testified that she initially lied to the officers, telling them that Fugate had not left the house. Michelle lied to the officers because she did not want McWhorter and appellant to "get in trouble," and because she "thought they could possibly get away with it." (Tr. Vol. III, 433.) Michelle admitted throwing away a pair of pants appellant was wearing on the night of the incident.
 {¶ 12} Dr. Jan Gorniak, a forensic pathologist with the Franklin County Coroner's Office, performed an autopsy on Buddy. Dr. Gorniak testified that the victim suffered contusions, lacerations, and skull fractures, including a depressed fracture, caused by blunt trauma. According to Dr. Gorniak, a depressed fracture "takes a lot of force," similar to injuries sustained in a car accident. (Tr. Vol. IV, 619.) Dr. Gorniak opined that the cause of death was "blunt impact to the head with skull and brain injury." (Tr. Vol. IV, 620.) The physician stated that the injuries were consistent with being struck by a board.
 {¶ 13} William M. Popich is an inmate at the Pickaway Correctional Institution, having previously pled guilty to a charge of engaging in a pattern of corrupt activity. Popich testified that he met appellant in a jail holding cell, and the two men engaged in conversation. Appellant told Popich that he had been charged with murder. Later, *Page 5 
appellant "bragged about the beating of the individual and how he had beat him with a four-by-four post; and then after beating him * * * grabbing his ankles and spinning him over and giving him four hits to the back of the head and explained how the entire back of the skull was split." (Tr. Vol. IV, 649.)
 {¶ 14} Appellant related to Popich that there had been an earlier confrontation on the date of the incident, during which the victim had been chased down an alley and beaten, and that an individual named McWhorter then went "back to the house, got gloves, and came back to finish the beating, said, [l]et's go get him." (Tr. Vol. IV, 658.) Appellant and McWhorter then went to the alley and observed a box; appellant kicked the post off the side of the box and began to beat the victim with the four-by-four post. The victim had a hooded jacket, and appellant pulled the hood over the victim's head "to control blood splatter." (Tr. Vol. IV, 658.) According to Popich, "it was like [appellant] took pride in what he had done. I mean, he was excited, like [l]ook what I did with four hits." (Tr. Vol. IV, 650.)
 {¶ 15} Following the presentation of evidence, the jury returned a verdict finding appellant guilty of aggravated murder. On April 22, 2008, the trial court sentenced appellant to 30 years to life incarceration.
 {¶ 16} On appeal, appellant sets forth the following five assignments of error for this court's review:
 Assignment of Error Number One
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION IN LIMINE TO EXCLUDE PRIOR ACTS TESTIMONY. *Page 6 
 Assignment of Error Number [T]wo
 APPELLANT WAS DENIED A FAIR TRIAL BY THE PROSECUTOR'S PATTERN OF RACIALLY BIASED PREMPTORY [sic] CHALLENGES FORBIDDEN BY THE UNITED STATES SUPREME COURT'S DECISION OF BATSON V KENTUCKY [(1986), 476 U.S. 79, 106 S.Ct. 1712] AND APPLIED TO THE APPELLANT BY POWERS V OHIO [(1991), 499 U.S. 400, 111 S.Ct. 1364].
 Assignment of Error Number Three
 THE TRIAL COURT ERRED BY NOT DISMISSING THE CHARGE OF AGGRAVATED MURDER PURSUANT TO CRIMINAL RULE 29 AS THEIR [sic] WAS NOT SUFFICIENT EVIDENCE TO CONVICT APPELLANT.
 Assignment of Error Number Four
 APPELLANT'S CONVICTION FOR AGGRAVATED MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error Number Five
 THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO A THIRTY YEAR TO LIFE TERM OF IMPRISONMENT.
 {¶ 17} We will initially address appellant's third and fourth assignments of error. Under his third assignment of error, appellant argues that the trial court erred in failing to grant his Crim. R. 29 motion for judgment of acquittal. Under his fourth assignment of error, appellant asserts his conviction for aggravated murder was against the manifest weight of the evidence.
 {¶ 18} In State v. Darrington, 10th Dist. No. 06AP-160,2006-Ohio-5042, ¶ 15-16, this court discussed the applicable standards of review in considering a trial court's denial of a motion for judgment of acquittal, pursuant to Crim. R. 29, and a manifest-weight challenge, holding: *Page 7 
 A motion for judgment of acquittal, pursuant to Crim. R. 29, tests the sufficiency of the evidence. State v. Knipp, Vinton App. No. 06CA641, 2006 Ohio 4704, at P11. Accordingly, an appellate court reviews a trial court's denial of a motion for acquittal using the same standard for reviewing a sufficiency of the evidence claim. State v. Barron, Perry App. No. 05 CA 4, 2005 Ohio 6108, at P38.
 Sufficiency of the evidence and weight of the evidence are distinct legal concepts. State v. Sexton, Franklin App. No. 01AP-398, 2002 Ohio 3617. In Sexton, at P30-31, this court discussed those distinctions as follows:
 To reverse a conviction because of insufficient evidence, we must determine as a matter of law, after viewing the evidence in a light most favorable to the prosecution, that a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt. * * * Sufficiency is a test of adequacy, a question of law. * * * We will not disturb a jury's verdict unless we find that reasonable minds could not reach the conclusion the jury reached as the trier of fact. * * * We will neither resolve evidentiary conflicts in the defendant's favor nor substitute our assessment of the credibility of the witnesses for the assessment made by the jury. * * * A conviction based upon legally insufficient evidence amounts to a denial of due process, * * * and if we sustain appellant's insufficient evidence claim, the state will be barred from retrying appellant. * * *
 A manifest weight argument, by contrast, requires us to engage in a limited weighing of the evidence to determine whether there is enough competent, credible evidence so as to permit reasonable minds to find guilt beyond a reasonable doubt and, thereby, to support the judgment of conviction. * * * Issues of witness credibility and concerning the weight to attach to specific testimony remain primarily within the province of the trier of fact, whose opportunity to make those determinations is superior to that of a reviewing court. * * * Nonetheless, we must review the entire record. With caution and deference to the role of the trier of fact, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury, as the trier of facts, clearly lost its way, thereby creating such a manifest miscarriage of justice that the conviction must be reversed and a new trial *Page 8 
ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction.
 {¶ 19} Under R.C. 2903.01(A), aggravated murder is defined as "purposely, and with prior calculation and design," causing the death of another. The Supreme Court of Ohio has observed that "[n]o bright-line test exists that `emphatically distinguishes between the presence or absence of "prior calculation and design."'" State v. Cassano,96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 79, quoting State v. Taylor,78 Ohio St.3d 15, 20, 1997-Ohio-243.
 {¶ 20} In State v. Trewartha, 165 Ohio App.3d 91, 2005-Ohio-5697, ¶ 18-19, this court held:
 Because no bright-line test or a rigid set of factors defines the presence of prior calculation and design, "the determination of whether an accused acted with prior calculation and design turns on the particular facts and evidence presented at trial." * * * Consequently, "where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified. * * *"
 The state can prove "prior calculation and design" from the circumstances surrounding a murder in several ways: (1) evidence of a preconceived plan leading up to the murder, (2) evidence of the perpetrator's encounter with the victim, including evidence necessary to infer the defendant had a preconceived notion to kill regardless of how the robbery unfolded, or (3) evidence that the murder was executed in such a manner that circumstantially proved the defendant had a preconceived plan to kill.
(Citations omitted.) *Page 9 
 {¶ 21} Appellant argues the trial court should have granted the motion for judgment of acquittal because there was insufficient evidence of prior calculation and design. Appellant maintains the evidence fails to show that he and McWhorter had any plan regarding what to do with the victim in the alley. Appellant's manifest-weight argument is based upon the same assertion that there was a lack of evidence to show that a plan was conceived, even moments before the murder, to satisfy the requirement that the killing was done with prior calculation and design.
 {¶ 22} Regarding appellant's sufficiency challenge, the state presented evidence indicating that, on the evening of January 10, 2007, McWhorter and Fugate chased Buddy into an alley; Buddy was knocked to the ground, and McWhorter began punching him. After this initial assault, McWhorter and Fugate returned to McWhorter's residence. Appellant told McWhorter that he should return to the alley and "finish it." A short time later, Heather, Angel, and Michelle walked to a nearby store; on the way back, they observed Buddy in the alley, sitting up but dazed.
 {¶ 23} When the women returned to the McWhorter residence, the men were still discussing going back to the alley, with appellant again urging McWhorter to "finish it." Fugate testified that McWhorter had mixed feelings about what to do, but appellant "kept repeating * * * [l]et's go finish him off." (Tr. Vol. II, 248.) Heather similarly testified that appellant stated: "He can't just leave him laying there. You got to go finish it. * * * He will go to the police. We have got to go finish it." (Tr. Vol. II, 306.) Michelle also testified that appellant's reaction was "[t]hat they had to go finish the job so my brother didn't go to jail." (Tr. Vol. III, 430.) The women tried to persuade McWhorter not to go back, but appellant *Page 10 
told McWhorter "he could get away with it." (Tr. Vol. III, 431.) McWhorter and appellant then put on coats and gloves and walked out the door.
 {¶ 24} The men returned about 20 minutes later; while McWhorter was somewhat calm, appellant was "hyped up." (Tr. Vol. II, 310.) Heather testified that she and Michelle were in the kitchen when appellant related he had "picked up the board and couldn't stop hitting Buddy." (Tr. Vol. II, 311.) Michelle also testified that appellant, while sitting in the kitchen, stated "he couldn't stop hitting him in the head with the board." (Tr. Vol. III, 432.)
 {¶ 25} Upon review of the evidence, and construing it in a light most favorable to the prosecution, we find there was evidence of sufficient time and opportunity for the planning of the act, as well as circumstances showing a scheme, to justify a finding of prior calculation and design. Trewartha, at ¶ 18. As noted by the state, there was testimony that appellant and McWhorter deliberated for at least 15 to 30 minutes at the residence before going to the alley to "finish it." During this time, appellant encouraged McWhorter to return to the alley where the victim had been left. Shortly thereafter, the two men put on coats and gloves and left the house. At trial, part of the state's theory of the case was appellant, on the way to the alley, walked over to a box made of four-by-four landscape lumber, exerted force by kicking the board, and extracted a portion of the timber to use as a weapon. As set forth above, two of the state's witnesses testified that appellant, upon returning to the residence, told them he could not stop hitting the victim in the head. According to the testimony of Popich, appellant related that the victim was wearing a hooded jacket, and appellant pulled the hood over the victim's head "to control blood splatter." *Page 11 
 {¶ 26} Contrary to appellant's argument, the fact that appellant picked up the board on the way to the alley to use as a weapon does not preclude a finding of prior calculation. We note that this same argument was rejected in the appeal of appellant's co-defendant and accomplice, Ronnie McWhorter. See State v. McWhorter, 10th Dist. No. 08AP-263,2008-Ohio-6225, ¶ 24 (rejecting claim that decision to acquire timber on the way to find victim was independent of earlier conversations; acquisition and use of substantial piece of lumber was consistent with earlier statements they should finish victim off). The evidence also suggests the victim was either unconscious or semiconscious at the time appellant and McWhorter arrived at the alley, posing no threat to appellant. See State v. Coley (2001), 93 Ohio St.3d 253, 264 (sufficient evidence shown to prove prior calculation and design included fact that victim did not resist or pose threat to defendants).
 {¶ 27} Similar to his sufficiency challenge, appellant also contends the jury's finding of prior calculation and design was not supported by the manifest weight of the evidence. However, the record fails to show that the trier of fact lost its way and created a manifest miscarriage of justice in finding that the state presented competent, credible evidence of prior calculation and design. Thus, the conviction is not against the manifest weight of the evidence.
 {¶ 28} Accordingly, appellant's third and fourth assignments of error are without merit and are overruled.
 {¶ 29} Under his first assignment of error, appellant contends the trial court erred in denying his motion in limine to exclude prior acts testimony. Specifically, appellant argues that the trial court should have excluded a statement purportedly made by *Page 12 
appellant to McWhorter that appellant had "gotten away with this before." (Tr. Vol. I, 7.) According to appellant, the implication of the statement was that he had previously gotten away with murder, which appellant maintains is not true. Appellant acknowledges a prior aggravated assault conviction, but argues there was no proof offered by the state of a prior murder, and that the introduction of this statement was prejudicial.
 {¶ 30} Evid. R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Thus, "[e]vidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." State v. Lowe, 69 Ohio St.3d 527, 530, 1994-Ohio-345.
 {¶ 31} In discussing the motion in limine prior to trial, the prosecution argued that the statement was admissible because it provided evidence of appellant's intent, plan, and prior calculation and design. Appellant contends the statement was inadmissible under Evid. R. 404(B) because the state offered no substantial proof appellant committed a prior murder. In response, the state maintains it never argued appellant had committed some uncharged murder.
 {¶ 32} We note that, in ruling on the motion in limine, the trial court did not discuss whether the statement was admissible under one of the exceptions to Evid. R. 404(B) (e.g., such as proof of intent, plan, etc.); rather, the court found the reference "got away with this before" to be vague, and that it "could mean anything." (Tr. Vol. I, 9.) Upon *Page 13 
review, we agree with the trial court that the comment is arguably vague, and does not necessarily imply that appellant previously got away with murder. Furthermore, in denying the motion in limine, the trial court may have viewed the statement as probative of the crime charged as opposed to "other acts" evidence under Evid. R. 404. See, e.g.,United States v. DeClue (C.A.6, 1990), 899 F.2d 1465, 1472 ("[e]vidence which is probative of the crime charged and does not solely concern uncharged crimes is not `other crimes' evidence").
 {¶ 33} However, even assuming the comment should not have been admitted, we are not persuaded that the outcome of the trial would have been different had this comment been excluded. Rather, in light of the other, overwhelming evidence of guilt presented by the state, as discussed above, we would find any error in the admission of the challenged evidence to be harmless. See State v. Carey, 5th Dist. No. 2008-CA-20, 2009-Ohio-103, ¶ 35, quoting State v. Ferguson (1983),5 Ohio St.3d 160, 16, fn. 5 (even if evidence was inadmissible under Evid. R. 404(B), a reviewing court can still determine the error was harmless "where there is `either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction'").
 {¶ 34} Appellant's first assignment of error is without merit and is overruled.
 {¶ 35} Under his second assignment of error, appellant asserts he was denied a fair trial by the prosecutor's use of a racially biased peremptory challenge to remove an African-American woman from the jury venire. Appellant maintains the trial court should have sustained his challenge pursuant to the United States Supreme Court's ruling inBatson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712. *Page 14 
 {¶ 36} In State v. Talley, 6th Dist. No. L-07-1153, 2008-Ohio-6807, ¶ 17-19, the court noted the requirements for bringing a "Batson challenge," holding in relevant part:
 The United States Supreme Court has determined that it is unconstitutional for a prosecutor to challenge a prospective juror on the sole basis of race in the belief that race could prevent juror impartiality. * * *
 To prevail on a Batson claim, the defendant must satisfy a three-part test in order to establish that the use of a disputed peremptory challenge was improperly, racially motivated. First, a prima facie case must be shown that the prosecutor exercised the peremptory challenge against a member of a racial group under circumstances from which an inference can be made that the exclusion was race based. Second, the state must demonstrate a race neutral explanation for the exercise of its peremptory challenge in response to a Batson objection. Finally, the trial court must weigh both sides and determine whether the defendant has proven a Batson violation.
 Appellate courts review Batson determinations with great deference. Batson judgments will be reversed only if found to be clearly erroneous. State v. White (1999), 85 Ohio St.3d 433, 437, 1999 Ohio 281, 709 N.E.2d 140.
(Citations omitted.)
 {¶ 37} In the instant case, the record indicates that the prosecutor exercised a peremptory challenge during voir dire as to prospective Juror No. 8, prompting defense counsel to raise a Batson challenge. The trial court then asked the prosecutor whether he had a neutral reason for seeking to exercise the challenge. The prosecutor responded affirmatively, stating that this prospective juror "was falling asleep before you made the last break which is why I struck her." (Tr. Vol. I, 185.) The prosecutor further stated that defense counsel had "even commented in the courtroom that she was falling asleep." (Tr. Vol. I, 185.) Defense counsel responded: "I didn't make a comment. I saw that she *Page 15 
had her eyes shut. I didn't see she was falling asleep." (Tr. Vol. I, 185.) The trial court found that the prosecutor "is giving a neutral reason," and, therefore, overruled the challenge. (Tr. Vol. I, 185.)
 {¶ 38} Upon review, we cannot say that the ruling of the trial court was clearly erroneous. The trial court questioned the prosecutor, who provided a race-neutral explanation for seeking to exercise the peremptory challenge. See United States v. Maseratti (C.A.5, 1993), 1 F.3d 330, 335-36 (explanation by prosecutor to exercise peremptory challenge because prospective juror "appeared to be sleeping" during portion of voir dire was "clearly race-neutral"); Talley, at ¶ 20 (prosecutor offered "race neutral" explanation for peremptory challenge on the basis juror was sleeping during voir dire).
 {¶ 39} Accordingly, appellant's second assignment of error is without merit and is overruled.
 {¶ 40} Under his fifth assignment of error, appellant asserts the trial court erred in sentencing him to a term of 30 years to life for the aggravated murder conviction. Appellant's primary argument is that the trial court erred in finding him more culpable than his co-defendant, resulting in an unfair disparity of sentence.
 {¶ 41} The trial court sentenced appellant, pursuant to R.C. 2929.03, which provides in relevant part:
 (A) If the indictment or count in the indictment charging aggravated murder does not contain one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge of aggravated murder, the trial court shall impose sentence on the offender as follows:
 (1) * * * *Page 16 
 (a) Life imprisonment without parole;
 (b) Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving twenty years of imprisonment;
 (c) Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;
 (d) Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving thirty full years of imprisonment[.]
 {¶ 42} Under the provisions of R.C. 2953.08(G), "when reviewing felony sentences, we examine whether clear and convincing evidence establishes that the defendant's felony sentence is contrary to law." State v.Reed, 10th Dist. No. 08AP-20, 2008-Ohio-6082, ¶ 63, citing State v.Burton, 10th Dist. No. 06AP-690, 2007-Ohio-1941.
 {¶ 43} As noted under the facts, the trial court sentenced appellant to 30 years to life imprisonment. Appellant does not argue that his sentence was in excess of the statutory range. Rather, his main contention is that the sentence was contrary to law because his co-defendant received a less harsh sentence; specifically, in a separate trial, Ronnie McWhorter, following his conviction for aggravated murder, was sentenced to life imprisonment with eligibility for parole after 20 years.
 {¶ 44} We find appellant's argument unpersuasive. In the present case, there was competent, credible evidence which, if believed, indicated that appellant not only encouraged McWhorter to go back to where the victim had been initially beaten, but that appellant inflicted the fatal blows to the victim's head with the piece of timber. As noted by the state, there is no requirement that the trial court give findings or reasons for imposing a particular sentence. See Reed, at ¶ 64. In the instant case, however, the trial *Page 17 
court did mention, in discussing the sentence to be imposed, the violent nature of the attack and the fact appellant subsequently bragged about his conduct. Here, the sentence imposed was permitted by statute and, as appellant acknowledges, the trial court did not impose the most severe sentence allowable. Further, "`there is no requirement that co-defendants receive equal sentences.'" State v. Martin, 11th Dist. No. 2006-T-0111, 2007-Ohio-6722, ¶ 40, quoting State v. Rupert, 11th District No. 2003-L-154, 2005-Ohio-1098, ¶ 11.
 {¶ 45} Upon review, appellant has not demonstrated that the sentence imposed was contrary to law, and his fifth assignment of error is overruled.
 {¶ 46} Based upon the foregoing, appellant's five assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
McGRATH and TYACK, JJ., concur. *Page 1