[Cite as *State v. Dunkle*, 2021-Ohio-1035.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 19AP-820 |
| v. | : | (C.P.C. No. 07CR-491) |
| Charles E. Dunkle, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 30, 2021

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert*.

**On brief:** *The Law Office of Eric J. Allen, Ltd.*, and *Eric J. Allen*, for appellant. **Argued:** *Eric J. Allen*.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Charles E. Dunkle, appeals a judgment of the Franklin County Court of Common Pleas denying his motion for leave to file a delayed motion for new trial. Because the trial court did not abuse its discretion, we affirm that judgment.

{¶ 2} On January 18, 2007, appellant and a co-defendant, Ronnie McWhorter, were indicted for aggravated murder in violation of R.C. 2903.01. The indictment arose from the beating death of Howard Hough on January 10, 2007.

{¶ 3}    In summary,[1] the testimony presented at appellant's trial established that in the early evening of January 10, 2017, McWhorter and Paul Fugate beat Hough severely, left him in an alley, and then went to McWhorter's residence. McWhorter's sister, Michelle, a neighbor, Heather Moore, and appellant were at the house when the men returned. McWhorter told the group about Hough's beating.  Heather and Michelle testified that they heard appellant urge McWhorter to return to the scene to finish Hough off in order to keep him from reporting the incident to the police.  Thereafter, appellant and McWhorter left the residence for 20 to 30 minutes.  When they returned, appellant told Heather and Michelle that he had picked up a board and repeatedly beat Hough in the head with it. Medical testimony established that Hough died from blunt trauma to the head and that his injuries were consistent with being struck by a board.  Following his arrest, appellant boasted to a cell mate about beating an individual in the back of the head with a board.

{¶ 4}    A jury returned a verdict finding appellant guilty as charged in the indictment.  The trial court sentenced appellant to 30 years to life imprisonment.  This court affirmed appellant's conviction and sentence.  *State v. Dunkle*, 10th Dist. No. 08AP-370, 2009-Ohio-1549.   Appellant subsequently filed a petition for post-conviction relief pursuant to R.C. 2953.21.  This court affirmed the trial court's dismissal of the petition. *State v. Dunkle*, 10th Dist. No. 13AP-687, 2014-Ohio-1028.

{¶ 5}    On August 19, 2019, appellant filed two motions in the trial court: a motion for leave to file a delayed motion for new trial and a motion for new trial.  Appellant's motions were premised on alleged newly discovered evidence of his innocence, i.e., McWhorter's recantation of his trial testimony implicating appellant in Hough's murder. In his motion for leave, appellant maintained that McWhorter wrote to him and indicated that he "wanted to tell the truth" in order to "calm his conscience."  (Aug. 19, 2019 Mot. for an Order Granting Leave to File a Mot. for New Trial, at 4.)  Thereafter, appellant's counsel obtained an affidavit "as soon as he could to secure this information."  *Id.* at 5.  Appellant asserted that McWhorter's affidavit "exonerates the Defendant." *Id.* at 4.  Appellant argued that McWhorter's recantation of his trial testimony constituted newly discovered evidence that he was unavoidably prevented from discovering within the 120-day period for filing a

---

[1] The summary is gleaned from the facts set forth in *State v. Dunkle*, 10th Dist. No. 08AP-370, 2009-Ohio-1549, and *State v. Dunkle*, 10th Dist. No. 13AP-687, 2014-Ohio-1028.

motion for new trial because "[i]t was not feasible for the Defendant to know that [McWhorter] would eventually tell the truth." *Id.*

{¶ 6} In an undated affidavit attached to appellant's motion for leave, McWhorter stated that Hough's mistreatment of his mother caused friction between him and Hough. (McWhorter Aff. at ¶ 1.) On January 10, 2017, McWhorter was at home with his wife, his sister, and appellant. *Id.* at ¶ 2. Fugate told McWhorter he had just seen Hough in a nearby alley. *Id.* at ¶ 3. McWhorter had been drinking and was very angry with Hough. He then left the house with Fugate, found Hough in the alley, beat him, and left him there. *Id.* at ¶ 3, 6. Later, McWhorter's sister and some other women checked on Hough; he was sitting in the alley and appeared to be alive and well. *Id.* at ¶ 4. The women returned to the house and reported this information to McWhorter. *Id.*

{¶ 7} McWhorter further attested that he "does not remember Charles Dunkle imploring him to return to the scene of the crime" and that "[n]one of the testimony that accuses him of doing so is accurate." *Id.* at ¶ 5. He further averred that appellant remained at the house and "did not assist nor did he plan the attack on * * * Hough." *Id.* McWhorter attested that he returned to the scene and "finished * * * Hough himself," and that appellant "did not assist, encourage or aid him in any way in the killing." *Id.* at ¶ 6. According to McWhorter, he "killed * * * Hough because of how he treated his mother and there was no other reason." *Id.* He further stated that "[t]here was also no other assailants but him." *Id.*

{¶ 8} McWhorter further averred that he did not tell the police, his attorney, or the judge that he was solely responsible for Hough's death. *Id.* at ¶ 7. He did not tell the police because he "wanted to avoid trouble." *Id.* He attested that "[t]his is the first he accepts responsibility for what he did to * * * Hough." *Id.* According to McWhorter, he "has been incarcerated for over ten years and wishes to set the record straight regarding Charles Dunkle" and "it is the right thing to do." *Id.* at ¶ 7, 8. He further stated that "Charles Dunkle has not provided him with any money or assistance to [him] or his family" and "has not threatened him or his family." *Id.* at ¶ 8. McWhorter asserted that he "is telling the truth and asks the court to give Charles Dunkle a new trial." *Id.*

{¶ 9} Appellant also attached to his motion for leave his own affidavit dated "This ___ day of June 2019." Therein, appellant averred that "Mr. McWhorter testified against him at his trial." (Appellant Aff. at ¶ 2.) He further stated that McWhorter did not contact

him "to state the truth" until "late 2018." *Id.* at ¶ 3, 4. Appellant also attested that McWhorter provided an affidavit containing information "exonerating him" and that said information "was not available at trial, within the one hundred and twenty days provided by rule, or until 2018." *Id.* at ¶ 5.

{¶ 10} On November 5, 2019, the trial court filed a decision and entry denying appellant's motion for leave to file a delayed motion for new trial. Specifically, the court found that appellant's motion for leave was untimely, as it was not filed within 120 days of the verdict as required by Crim.R. 33(B). The court further found that McWhorter's affidavit did not constitute newly discovered evidence within the meaning of Crim.R. 33. The court also found that appellant had failed to establish by clear and convincing evidence that he was unavoidably prevented from discovering the evidence within the initial 120-day period for filing a motion for new trial. *Id.* As the trial court's denial of appellant's motion for leave essentially rendered moot his motion for new trial, the trial court did not rule on it.

{¶ 11} In a timely appeal, appellant advances a single assignment of error for our review:

> The trial court abused its discretion in denying appellant's motion for leave to file a motion for new trial.

{¶ 12} Crim.R. 33 governs motions for new trial in criminal proceedings. Crim.R. 33(A) provides the grounds upon which a defendant may receive a new trial. As relevant here, Crim.R. 33(A)(6) provides that a defendant may be granted a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." A defendant must file a motion based upon Crim.R. 33(A)(6) within 120 days after the date on which a verdict or decision was rendered against him. Crim.R. 33(B). However, "[i]f it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period." *Id.*

{¶ 13} Accordingly, where a defendant misses the 120-day filing deadline, Crim.R. 33 mandates a two-step procedure. *State v. Cashin*, 10th Dist. No. 17AP-338, 2017-Ohio-

9289, ¶ 15, citing *State v. Graggs*, 10th Dist. No. 16AP-611, 2017-Ohio-4454, ¶ 13.  The defendant must first seek leave from the trial court to file a delayed motion for new trial.  The motion for leave must be supported by clear and convincing proof that the defendant was unavoidably prevented from learning of the newly discovered evidence within the 120-day period for filing a Crim.R. 33(A)(6) motion.  *Id.*, citing *Graggs* at ¶ 13.  Clear and convincing evidence is " 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' "  *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 14} A defendant is unavoidably prevented from filing a timely motion for new trial if he " 'had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.' "  *Cashin* at ¶ 16, quoting *State v. Walden*, 19 Ohio App.3d 141, 146 (10th Dist.1984).  Clear and convincing proof that a defendant was unavoidably prevented from filing a timely motion for new trial " 'requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.' "  *State v. Lee*, 10th Dist. No. 05AP-229, 2005-Ohio-6374, ¶ 9, quoting *State v. Mathis*, 134 Ohio App.3d 77, 79 (1999).

{¶ 15} If the trial court grants the motion for leave, the defendant must then file his actual motion for a new trial.  *Cashin* at ¶ 16, citing *State v. Noor*, 10th Dist. No. 16AP-340, 2016-Ohio-7756, ¶ 11.  In that motion, the defendant must demonstrate that the new evidence: " ' "(1) discloses a strong probability to that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." ' "  *Id.* at ¶ 15, quoting *State v. Hawkins,* 66 Ohio St.3d 339, 350 (1993), quoting *State v. Petro*, 148 Ohio St. 505 (1947), syllabus.

{¶ 16} The grant or denial of a motion for leave to file a delayed motion for new trial is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Lee* at ¶ 10, citing *State v. Carr*, 10th Dist. No. 02AP-1240, 2003-Ohio-2947. An abuse of discretion means that the trial court acted in an " 'unreasonable, arbitrary, or unconscionable' " manner or employed " 'a view or action that no conscientious judge could honestly have taken.' " *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, ¶ 23. "Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, ¶ 34.

{¶ 17} Preliminarily, we note that the record refutes the assertions in appellant's motion for leave and his affidavit that McWhorter testified at appellant's trial. The record reveals that neither the state nor appellant subpoenaed McWhorter. Further, the transcript of appellant's trial reveals that McWhorter did not testify. To be sure, a detective testified at McWhorter's trial that in an interview conducted after Hough's murder, McWhorter implicated appellant in the crime. *State v. McWhorter*, 10th Dist. No. 08AP-263, 2008-Ohio-6225, ¶ 11. However, the state did not present these statements at appellant's trial. Accordingly, McWhorter's affidavit does not constitute a "recantation" of his trial testimony.

{¶ 18} Recantation or not, appellant filed his motion for leave to file a delayed motion for new trial more than 11 years after his guilty verdict. As such, appellant was required to show by clear and convincing proof that he was unavoidably prevented from discovering the evidence relied upon to support the motion for new trial within 120 days of the verdict. In his motion for leave, appellant claimed that McWhorter wrote to him and indicated that he "wanted to tell the truth" in order to "calm his conscience." McWhorter's affidavit averred that he alone killed Hough and now accepts sole responsibility for the murder.

{¶ 19} In *State v. Ambartsoumov*, 10th Dist. No. 12AP-878, 2013-Ohio-3011, this court held that a defendant is not unavoidably prevented from discovering an exculpatory witness when the defense knew or should have known of the witness prior to the trial. *Id.* at ¶ 21-30. We noted that "[o]ther Ohio courts have similarly held that a defendant was not 'unavoidably prevented from discovering the evidence' where the witnesses were known to

the defense prior to trial." *Id.* at ¶ 22, citing *State v. Saban*, 8th Dist. No. 73647 (Mar. 18, 1999); *State v. Nicholson*, 8th Dist. No. 70916 (May 1, 1997). We also cited federal case law establishing that " 'if a defendant is aware of the evidence at the time of trial, then it is not newly discovered evidence under Rule. 33.' " *Id.* at ¶ 23, quoting *United States v. Sims*, 72 Fed.Appx. 249, 252 (6th Cir.2003). We specifically quoted the following passages from *Sims*: " 'where a witness who has indicated to the defendant * * * an unwillingness to testify truthfully at trial * * * but later supplies an affidavit exonerating the defendant of the offense, the affidavit is merely newly *available* evidence, but it not newly *discovered* evidence.' (Emphasis sic.) * * * Thus, 'a post-trial affidavit exonerating the defendant that was provided by a witness who could have been called at trial, but was not, can never be considered newly discovered evidence under Rule 33.' " *Id.* at ¶ 23, quoting *Sims,* citing *United States v. Turns*, 198 F.3d 584 (6th Cir.2000).

{¶ 20} Here, appellant clearly knew about McWhorter prior to trial and could have called him to testify. Appellant's suggestion that McWhorter's statement to the police implicating him in Hough's murder justifies his failure to call him as a witness at trial is misplaced. Appellant could still have subpoenaed McWhorter to testify and tested the credibility of any statements he may have made during his testimony. In *State v. Davis*, 10th Dist. No. 03AP-1200, 2004-Ohio-6065, Davis filed an untimely motion for new trial, relying on the affidavit of Dennis White, who confessed to the crimes after Davis was convicted. Davis did not call White as a witness at trial because White told a defense investigator that Davis had committed the crimes. The trial court denied Davis's motion on grounds that he had failed to prove by clear and convincing evidence that he was unavoidably prevented from discovering the evidence within 120 days of the verdict. The trial court specifically noted that had Davis exercised due diligence, he could have offered evidence of White's guilt at trial. This court affirmed, holding that White's confession did not constitute newly discovered evidence entitling Davis to relief under Crim.R. 33:

> Appellant failed to prove that White's confession, submitted 11 years after appellant's conviction, could not, in the exercise of due diligence, have been discovered prior to trial. Although White was available to testify, appellant never called him to the witness stand to test his credibility. What White would or would not have said on the witness stand was certainly relevant to appellant's decision on whether to call White to the stand. But this is not itself "newly discovered" evidence under Crim.R.

> 33. Appellant had the option of subpoenaing White and, if necessary, discrediting any perjured testimony. White's affidavit, presented by appellant, implicating White as the principal in the robbery and assault does not require the trial court to grant a motion for new trial filed over a decade after the crimes. *Petro*, supra. Furthermore, based on the evidence presented at trial, the jury found appellant guilty beyond a reasonable doubt.

*Id.* at ¶ 13 (internal citations omitted).

{¶ 21} Just as Davis could have discovered White's post-trial statement in the exercise of due diligence, appellant could have discovered McWhorter's statement that he alone killed Hough. Appellant's contention that he could not have discovered McWhorter's confession during or immediately after trial because McWhorter had only recently decided that he wished to "set the record straight" is of no avail. McWhorter, having already been tried and sentenced, was in state custody at the time of appellant's trial. Accordingly, appellant knew McWhorter's whereabouts and that he was available to testify. That McWhorter had previously implicated appellant in the murder does not excuse appellant from subpoenaing him and, if necessary, discrediting any perjured testimony McWhorter may have offered.

{¶ 22} We further note that the jury presumably found appellant guilty, at least in part, on the testimony provided by Heather and Michelle, who averred that appellant urged McWhorter to return to the scene and finish Hough off and then told them upon his return to the house that he had repeatedly beat Hough in the head with a board. As noted above, in the affidavit attached to appellant's motion for leave, McWhorter averred that "none of the testimony that accuses him of doing so is accurate." (McWhorter Aff. at ¶ 5.) While McWhorter's affidavit purports to discredit the testimony provided by Heather and Michelle, appellant did not attach to his motion for leave an affidavit from either Heather or Michelle recanting their trial testimony. Accordingly, while McWhorter now takes full responsibility for Hough's murder, appellant does not explain how McWhorter's confession can be reconciled with the trial testimony of Heather and Michelle implicating him in the crime.

{¶ 23} Moreover, even if we were to accept appellant's premise that he was unavoidably prevented from discovering McWhorter's confession because he had no reason

to suspect that McWhorter would ever "tell the truth" about Hough's murder, appellant has failed to demonstrate that he filed his motion for leave within a reasonable time after learning of McWhorter's confession and procuring McWhorter's affidavit memorializing it.

{¶ 24} A " 'trial court may require a defendant to file his motion for leave to file within a reasonable time after he discovers the evidence.' " *State v. Berry*, 10th Dist. No. 06AP-803, 2007-Ohio-2244, ¶ 37, quoting *State v. Griffith*, 11th Dist. No. 2005-T-0038, 2006-Ohio-2935, ¶ 15. Thus, even if a defendant establishes that he was unavoidably prevented from filing his motion for a new trial within the time limits set forth in Crim.R. 33(B), if there was an " 'undue delay in filing the motion after the evidence was discovered, the trial court must determine if that delay was reasonable under the circumstances or that the defendant has adequately explained the reason for the delay.' " *State v. N.D.C.*, 10th Dist. No. 15AP-63, 2015-Ohio-3643, ¶ 16, quoting *State v. Stansberry*, 8th Dist. No. 71004 (Oct. 9, 1997).

{¶ 25} Here, appellant's affidavit states that McWhorter contacted him in "late 2018." McWhorter's affidavit does not divulge when he contacted appellant. McWhorter states only that he had been incarcerated for over ten years and wished to set the record straight about appellant. Further, although appellant states in his motion for leave that his counsel obtained McWhorter's affidavit "as soon as he could to secure this information," appellant's affidavit contains no information regarding counsel's contacts with McWhorter, and the record does not include an affidavit from appellant's counsel delineating his efforts to obtain McWhorter's affidavit or when the affidavit was obtained. Further, McWhorter's affidavit is not dated, and neither appellant's motion nor his affidavit indicates when McWhorter signed the affidavit or provided it to him. Thus, it is impossible to determine whether appellant secured McWhorter's affidavit within a reasonable time after McWhorter contacted him. In any event, appellant did not file his motions until August 19, 2019. Appellant provides no explanation for the delay between "late 2018" when he was contacted by McWhorter and the filing of the motions on August 19, 2019.

{¶ 26} Based on the record before this court, we find that appellant failed to establish by clear and convincing proof that he was unavoidably prevented from discovering the evidence relied upon to support his motion for new trial, i.e., McWhorter's confession, within 120 days of the verdict. We further find that appellant failed to file his motion for

leave to file a delayed motion for new trial within a reasonable time after discovering McWhorter's confession.  As such, the trial court did not abuse its discretion in denying appellant's motion for leave to file a delayed motion for new trial.

{¶ 27} Based on the foregoing, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BEATTY BLUNT and ZAYAS, JJ., concur.

Zayas, J., of the First Appellate District, sitting by assignment
in the Tenth Appellate District.

_____