[Cite as *State v. Graggs*, 2017-Ohio-4454.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                              :

      Plaintiff-Appellee,            :
                                                                    No. 16AP-611
v.                                              :        (C.P.C. No. 08CR-1098)

John Q. Graggs,                         :        (ACCELERATED CALENDAR)

      Defendant-Appellant.        :

---

D E C I S I O N

Rendered on June 22, 2017

---

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Kimberly M. Bond,* for appellee.

**On brief:** *John Q. Graggs,* pro se.

---

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1}   John Q. Graggs appeals from the decision of the Franklin County Court of Common Pleas denying his motion for a new trial under Crim.R. 33.   For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2}   A jury found Graggs guilty of aggravated robbery under R.C. 2911.01, kidnapping under R.C. 2911.01, and aggravated murder under R.C. 2903.01. The trial court imposed a life sentence without parole. (Mar. 3, 2009 Final Jgmt. Entry.)

{¶ 3}   We incorporate here the facts leading to Graggs' conviction as recounted in the original appeal:

> The charges in this case arise out of the shooting death of
> Fred Brock, also known as "Food Stamp Freddie" ("Brock")
> that occurred on January 8, 2008. The following description
> of events surrounding Brock's death were adduced at trial.

Marcus Jones ("Marcus") had been living at 3566 East Main Street, Apartment B-11, for about three months prior to Brock's death. According to Marcus, he and his friend Jessie Lanier ("Lanier") sold cocaine out of this apartment. Marcus testified they sold bricks of cocaine for $ 28,000 a piece. Brock was a friend of Lanier's that met Marcus about three days prior to the shooting. Essentially, Brock was hired to "stay in the house and pretty much make sure no one came in the house and took the money and the drugs." (Tr. 351.)

On January 8, 2008, Marcus picked up his cousin, Dominic Jones ("Dominic"), and they went to a local high school basketball game. When Marcus left, Brock was on the couch watching television and Lanier was in the bathroom. While at the basketball game, Marcus saw Lanier arrive at the game alone. After the game, Marcus and Dominic went to the home of Marcus's father, Marvin Jones ("Marvin"), and began watching a movie. After being at Marvin's for approximately 15 minutes, Marcus got a telephone call from Lanier telling Marcus to come to the apartment. When Marcus and Dominic arrived at the apartment, Lanier was not there, but Lanier and a girl arrived about two minutes later. The three men entered the apartment where Brock was lying face down on the floor, handcuffed and shot.

Marcus testified he never touched the body, but he was scared and he, Dominic, and Lanier began to clear the apartment of drug paraphernalia and things related to the drug operation, including scales and $ 17,000 in cash. After taking several loads of items to Lanier's vehicle, Lanier left the complex. Marcus and Dominic then left the apartment and went to the Barnett Recreation Center where they called Marvin. According to Marvin, about 15 minutes had passed from when Marcus and Dominic left his house and made the call. Marvin told Marcus to call the police, and the three men proceeded to the apartment complex. Marvin went into the apartment with Dominic while Marcus called 911 from the hallway.

Just as the dispatch was ending, Whitehall Police Officer Eric Hollyfield pulled into the parking lot of the apartment complex and observed a man waving "frantically" to him. (Tr. 35.) As Officer Hollyfield entered the building, two other men directed him to Apartment B-11. Upon entering the apartment, Officer Hollyfield observed the victim lying face down on the floor. There was blood on the victim's back, and

his hands were handcuffed behind his back. After clearing the room, Officer Hollyfield checked for a pulse and called for medics. According to Officer Hollyfield, the entire apartment appeared to be in disarray and "methodically ransacked," as dresser drawers were pulled out and cushions were flipped. (Tr. 73.)

Marcus testified that though the apartment had been neat when he left, "everything was just thrown around" when he returned from the basketball game. (Tr. 378.) Marcus also discovered that $ 35,000 in cash and Lanier's revolver were missing from the apartment. Though Marcus testified he initially lied to the police because he feared facing drug charges, he later told them the "whole truth" after he was arrested. (Tr. 388.) Marcus denied touching or shooting a gun on January 8, 2008; however, a gun shot residue test conducted at 10:33 p.m. that day revealed particles "highly indicative" of gunshot powder residue. Marcus denied knowing or ever meeting appellant.

According to the testimony of the medical examiner, Brock had been shot three times, twice to the back and once to the head. Heather Ann Williams, a forensic scientist at the Ohio Bureau of Criminal Identification and Investigation ("BCI"), testified that the bullet recovered from Brock's thorax and the bullet recovered from the floor were fired from the same gun, but the bullet recovered from Brock's head was fired from a different gun.

During evidence collection at the scene, the tip of a green latex glove was found under Brock's body. The glove was found to contain the DNA of appellant. A search of appellant's residence revealed a revolver and a green latex glove. The gun was determined not to be one that fired any of the bullets recovered from the scene, but the glove tip from the scene was determined to be similar to the glove found at appellant's residence.

On January 9, 2008, at approximately 1:25 p.m., appellant paid cash for a pair of diamond earrings at Jared's jewelry store in the total amount of $ 480.35. At 8:19 p.m. that day, appellant returned to Jared's and paid $ 4,771.69 in cash for an anniversary ring. On January 14, 2008, appellant also made a lump-sum payment of $ 2,900 on the loan for his Cadillac. There was testimony that as of January 8, 2008, appellant was working full time and making $ 16.26 per hour, and he netted $ 443.73 on January 4, 2008 and $

495.76 on January 11, 2008. Additionally, prior to making the lump-sum payment on the vehicle, appellant had made only erratic payments during 2007.

During an interview with Whitehall Detective Steve Brown, appellant told Detective Brown that while he knew Brock, he had not seen him in ten years. Appellant also told Detective Brown that he was unfamiliar with the apartments where Brock was killed and had never been there. Appellant denied even knowing where the apartments were located. According to phone records, appellant made three calls between 7:42 and 7:43 p.m. on January 8, 2008 in the vicinity of a cell tower one-half mile from Marcus's apartment. At approximately 8:50 p.m. that same day, appellant made two calls in the vicinity of a cell tower near his home. None of the calls appeared to have been made to Marcus, Dominic or Lanier.

*State v. Graggs*, 10th Dist. No. 09AP-339, 2009-Ohio-5975, ¶ 2-11 ("*Graggs I*").

{¶ 4} On appeal, we affirmed the convictions. *Id.* at ¶ 39.

{¶ 5} Graggs subsequently filed a motion for postconviction relief under R.C. 2953.21(A)(1)(a), which the trial court overruled. Graggs appealed, and this court affirmed. *State v. Graggs*, 10th Dist. No. 10AP-249, 2010-Ohio-5716, ¶ 33 ("*Graggs II*").

{¶ 6} On August 8, 2013, Graggs filed a motion for leave to file a motion for a new trial under Crim.R. 33, alleging that newly-discovered evidence had emerged that implicated Jessie Lanier in Brock's murder. Graggs appealed the trial court's denial of the motion, and we affirmed the denial on appeal. *State v. Graggs*, 10th Dist. No. 13AP-852, 2014-Ohio-1195, ¶ 13 ("*Graggs III*").

{¶ 7} Graggs filed another motion for leave to file a motion for a new trial on March 24, 2015, alleging that an inmate, Jamal Sealy, had told Graggs that Lanier had murdered Brock. The trial court overruled the motion, Graggs appealed, and this court affirmed the trial court's ruling. *State v. Graggs*, 10th Dist. No. 15AP-480, 2015-Ohio-3990, ¶ 16 ("*Graggs IV*").

{¶ 8} Graggs filed a third motion for a new trial under Crim.R. 33 on July 14, 2016. In support of his motion, he attached an affidavit from Michael Shepard, who claimed to have been in the apartment at the time Brock was shot. Shepard stated that he, Lanier, and Brock were the only ones in the apartment, and that Brock had been shot

while Lanier was in the bathroom. (July 14, 2016 Mot. & Shepard Aff.) Graggs also attached an affidavit signed by Lance King, who stated that he had heard Shepard state "during a conversation with four or five other guys" that Shepard had been present when Lanier shot Brock. (King Aff.) In support of his motion, Graggs argued that he was unavoidably prevented from discovering Shepard's testimony because he had not known him until May 2016, when King informed Graggs of what he had overheard.

{¶ 9}   The trial court denied the motion on August 2, 2016. Graggs appeals, and asserts two assignments of error:

> [I.] The trial court abused its discretion when it failed to grant Mr. Graggs' motion for leave to file [a motion] for a new trial, when the motion and supporting affidavits demonstrated by clear and convincing proof that he was unavoidably prevented from discovering the new evidence.

> [II.] The trial court abused its discretion when it ruled that Mr. Graggs' new evidence does not provide a strong probability that it would change the result if a new trial [were] granted.

## II. STANDARD OF REVIEW

{¶ 10}   "A motion for new trial pursuant to Crim. R. 33(B) is addressed to the sound discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion." *State v. Schiebel*, 55 Ohio St.3d 71, 73 (1990).

## III. ANALYSIS

{¶ 11} Crim.R. 33(A) lists a number of "causes affecting materially [the] substantial rights" of a defendant that warrant granting a new trial. Relevant here is the rule's allowance for a new trial if "new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Crim.R. 33(A)(6).

{¶ 12} Strict time limits typically apply to the filing of a motion for a new trial. Crim.R. 33(B) states:

> Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from

filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶ 13} Crim.R. 33 sets forth "a two-step procedure when a defendant seeks to file a motion for new trial more than 120 days after the conclusion of the trial." *Graggs IV* at ¶ 8, citing *State v. Bethel*, 10th Dist. No. 09AP-924, 2010-Ohio-3837, ¶ 13. First, "the defendant must demonstrate that he was unavoidably prevented from discovering the evidence relied upon to support the motion for new trial." *Id.* To do so, the defendant must clearly and convincingly demonstrate that he "had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence." *State v. Berry*, 10th Dist. No. 06AP-803, 2007-Ohio-2244, ¶ 19. Second, " 'if the defendant does establish by clear and convincing evidence that the delay in finding the new evidence was unavoidable, the defendant must file the motion for new trial within seven days from that finding.' " *Graggs IV* at ¶ 8, quoting *Bethel* at ¶ 13.

{¶ 14} Here, the trial court found that Graggs failed to demonstrate by clear and convincing evidence that he was unavoidably prevented from discovering Shepard's testimony. Although Graggs had not known Shepard at the time of trial, the trial court stated that:

Mr. Graggs was in the circle of people who had some tie to the Whitehall apartment which was the murder scene. Shepard, Lanier, Marcus Jones and others did too. Mr. Graggs has submitted no persuasive evidence suggesting any reason that he could not have tried to investigate *all* of the people whom he knew frequented the Whitehall apartment that winter once he was indicted for Brock's murder.

(Emphasis sic.) (Aug. 1, 2016 Journal Entry at 7.)

{¶ 15} The only evidence Graggs has presented to satisfy his burden of clearly and convincingly demonstrating that he was unavoidably prevented from discovering Shepard's existence is that Graggs did not know Shepard at the time of Brock's murder. But the mere fact that Graggs did not know of Shepard's existence at that time is simply another way of saying that he did not know the evidence in question existed. This is nothing more than a description of all undiscovered evidence. The issue is whether Graggs has shown that he was "unavoidably prevented from the discovery of the evidence," not whether he knew it existed or not. Crim.R. 33(B). As we have previously stated, "the phrases in Crim.R. 33(B) requiring an appellant to show by 'clear and convincing proof' that he or she was 'unavoidably prevented' from discovering evidence do not allow one to claim that evidence was undiscoverable simply because the defense did not undertake efforts to obtain the evidence sooner." *State v. Anderson*, 10th Dist. No. 12AP-133, 2012-Ohio-4733, ¶ 14 (rejecting defendant's assertion that he had not remembered a particular real estate transaction until after his trial).

{¶ 16} Furthermore, the trial court's observation that Graggs was one of a "circle of people" that included Shepard further undercuts Graggs' assertion that he was unavoidably prevented from learning of Shepard's existence. Accepting Shepard's own account as stated in the affidavit, he had known Brock for eight years and had known Lanier for six years before their deaths. Although Shepard states that he was not "close friends" with them, the length of time that he claims to have known them was sufficient to place him within the class of people that could have reasonably been investigated by Graggs or his attorney prior to trial. (Shepard Aff.) In short, the trial court did not err when it concluded that Graggs failed to present clear and convincing evidence that he was unavoidably prevented from learning of Shepard's existence prior to trial. The first assignment of error is overruled.

{¶ 17} In the second assignment of error, Graggs argues that the trial court incorrectly concluded that the evidence he sought to present would not have resulted in a different outcome at trial.

> To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered

> evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

*State v. Petro*, 148 Ohio St. 505, 506 (1947), syllabus.

{¶ 18} The trial court was not required to consider the merits of the evidence, as it found that Graggs could not clear the hurdle of demonstrating that he was unavoidably prevented from discovering it. Nevertheless, the trial court found that Shepard's affidavit "add[ed] nothing meaningful to the evidence of Graggs' innocence" and would not have changed the jury's verdict. (Aug. 1, 2016 Journal Entry at 7.)

{¶ 19} As the trial court noted, both the affidavit of Shepard and the affidavit that formed the basis for the Crim.R. 33 motion that was the subject of *Graggs III* only implicate Lanier as a shooter, but this is not inconsistent with the case made against Graggs. Brock had been shot multiple times from more than one weapon, suggesting the presence of more than one shooter. Furthermore, the state introduced strong evidence against Graggs, including evidence of his DNA on the glove under the victim's body, a piece from a similar glove recovered from Graggs' apartment, the large cash transactions the day after the murder, and the cell phone records placing Graggs in the vicinity of the apartment the night of the murder. Thus, even if the evidence that Graggs relies upon were to be admitted at a new trial, it is unlikely to change the result from the first one. The trial court did not err when it came to the same conclusion. The second assignment of error is overruled.

{¶ 20} Because Graggs failed to show by clear and convincing evidence that he was unavoidably prevented from discovering the evidence relied upon to support his motion under Crim.R. 33, the trial court did not abuse its discretion when it denied his request for leave to file a motion for a new trial. Having overruled both assignments of error, we affirm the decision of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK, P.J. and BROWN, J., concur.

————————————