[Cite as *State v. Smith*, 2023-Ohio-4800.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 23AP-146 |
| v. | : | (C.P.C. No. 15CR-4092) |
| James E. Smith, Jr., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

———

D E C I S I O N

Rendered on December 28, 2023

———

**On brief:** [*Janet A. Grubb*, First Assistant Prosecuting Attorney], and *Taylor M. Mick*, for appellee.

**On brief:** *Sterling E. Gill, II*, for appellant.

———

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Defendant-appellant, James E. Smith, Jr., appeals from a judgment of the Franklin County Court of Common Pleas denying his motion for leave to file a delayed motion for new trial based on newly discovered evidence.

## I. Facts and Procedural History

{¶ 2} On August 21, 2015, appellant was indicted on two counts of possession of cocaine, in violation of R.C. 2925.11, and two counts of trafficking in cocaine, in violation of R.C. 2925.03. Following a jury trial, appellant was convicted on all counts.

{¶ 3} The following recitation of the evidence presented at trial is drawn from this court's decision on appellant's direct appeal, *State v. Smith*, 10th Dist. No. 16AP-772, 2017-Ohio-7740. On August 11, 2015, law enforcement officials received notification regarding "a FedEx package that possibly contained a controlled substance." *Id.* at ¶ 3. The suspect

package "was addressed to 'Jesica Aviles' [on] Chittenden Avenue in Columbus from a sender located on Veronica Drive in Coachella, California; the FedEx tracking number indicated that the package was shipped from a Kinko's in LaQuinta, California." *Id.* Officers found inside the FedEx package "six kilos of cocaine encased within a karaoke machine." *Id.* The officers subsequently "placed one package of cocaine, several packages of fake cocaine, and a GPS transmitter and another electronic device back into the karaoke machine, resealed the karaoke machine in the FedEx box, and obtained authorization to conduct a controlled delivery of the package to the Chittenden Avenue residence." *Id.*

{¶ 4} The following day, "a special agent for a drug traffic force, posing as a FedEx delivery person and equipped with electronic recording devices, approached the Chittenden Avenue residence," and "[s]urveillance and tactical teams positioned nearby the home monitored the delivery." *Id.* at ¶ 4. At the time the special agent arrived, "[t]hree men unknown to the special agent were on the front porch to the home: appellant, George Spencer, and Mark Chafin." *Id.* The special agent stated that "he had a package for 'Jesica,' and appellant responded, 'Yeah, yeah.' " *Id.* Appellant then "told the agent his name was Burt Johnson and [he] was a resident of the house, signed for the package, and indicated that he did not think the box needed to be signed for." *Id.* When the special agent "told appellant that the package could be stolen if left on the front porch, * * * appellant moved the package from the porch to inside the doorway of the house." *Id.* The special agent then left the residence.

{¶ 5} Several minutes following the controlled delivery, "Chafin removed the FedEx box from the home, placed it into the backseat of a Mercury Sable, and returned to the porch." *Id.* at ¶ 5. The vehicle was "titled to TSF Investment Company, LLC, a company for which appellant is the CEO." *Id.* A short time later, "appellant and Chafin got into the Sable" and appellant "drove the Sable down Chittenden Avenue with Chafin in the front passenger seat." *Id.*

{¶ 6} At the end of the street, uniformed detectives stopped the vehicle and officers "found the unopened FedEx package sitting on the back seat of the Sable behind the passenger seat." *Id.* at ¶ 6. The officers "seized $1,014 in cash and three cell phones from appellant's person." *Id.* During the inventory of the vehicle, "officers recovered from the

trunk a second, virtually identical karaoke machine containing an additional six kilos of cocaine." *Id.*

{¶ 7} Eight days later, upon obtaining a warrant, "officers searched a business owned by appellant named 'The Speed Factory' located [on] Groves Road, Unit 35, in Columbus." *Id.* at ¶ 7. Among the items seized by officers were "a cell phone from the garage area and a cell phone from a bag hanging on a coat rack." *Id.*

{¶ 8} At trial, "[a]n expert in mobile device forensics testified to analyzing the five cell phones recovered" from appellant's business or on his person. *Id.* at ¶ 8. One of the cell phones "found on appellant contained records of calls to the same southern California number at least 11 times from August 4 to August 12, 2015," and "[t]ext messages recovered from the phones found on appellant contained tracking numbers that matched the FedEx records of other packages sent between Columbus and California." *Id.* Further, "[a]t least one of those phones had accessed FedEx.com to track three packages between Columbus and California," and "[s]creenshots of texts from the Nokia phone taken from the coat rack of appellant's business included California addresses related to locations of five other FedEx packages shipped between Columbus and California coupled with texts relaying the Chittenden Avenue address." *Id.*

{¶ 9} Testimony by the officers involved in the case indicated "narcotics smugglers seldom ship drugs to their own residence but rather typically ship drugs to another residence with a fictitious name listed; likewise, the sender information listed on such a package is fictitious in a high percentage of cases." *Id.* at ¶ 9.

{¶ 10} Prior to trial, "Chafin allegedly executed an affidavit stating he placed both boxes in the Sable, believed the boxes contained auto parts, and that appellant did not know anything about the boxes. The affidavit is not a part of the record [on] appeal." *Id.* at ¶ 10. Appellant attempted to call Chafin at trial "to testify as a defense witness and enter Chafin's affidavit into evidence." *Id.* Outside the presence of the jury, "counsel for Chafin stated that he had advised Chafin to assert his right against self-incrimination under the Fifth Amendment to the U.S. Constitution." *Id.* The trial court agreed with Chafin's counsel "that taking the stand posed a genuine risk to Chafin's Fifth Amendment rights, noting that by carrying the box to the car Chafin arguably held equal possession of the narcotics." *Id.* Counsel for appellant "recognized that there could be a Fifth Amendment issue but objected

to not being able to ask him multiple questions and mentioned that he would like to question Chafin about whether officers threatened him to not testify, and whether that had an impact on his decision to invoke the Fifth Amendment." *Id.* Defense counsel failed to proffer for the record questions that he would have asked Chafin.

{¶ 11} After the jury returned, "defense counsel called Chafin to the stand" and, "[a]fter being sworn in, Chafin provided identifying information." *Id.* at ¶ 11. Appellant's counsel "handed Chafin his affidavit and asked whether he recognized it." *Id.* Acting on "his own counsel's advice, Chafin invoked his right against self-incrimination under the Fifth Amendment" and "further indicated that at his counsel's instruction, he would 'plead the fifth' in response to any question." *Id.* The trial court, noting "defense counsel's objection," then "instructed the jury not to draw any inference either for or against appellant on the basis of Chafin's failure to testify." *Id.* On the state's objection, "the trial court did not admit Chafin's affidavit into evidence on the basis that appellant was an unavailable witness, and the affidavit did not fall within any exception in Evid.R. 804(B)." *Id.*

{¶ 12} On October 13, 2016, following deliberations, the jury "returned verdicts finding appellant guilty of all counts." *Id.* at ¶ 12. Appellant filed a direct appeal from his convictions, raising three assignments of error in which he asserted the trial court erred in: (1) permitting Chafin to invoke his right against self-incrimination and in not ordering him to testify, (2) excluding the affidavit of Chafin, and (3) imposing a fine. In *Smith*, this court overruled all of appellant's assignments of error and affirmed the judgment.

{¶ 13} On July 23, 2020, appellant filed a pro se motion for leave to file a delayed motion for new trial. In the accompanying memorandum in support, appellant asserted that "[r]egardless of the information presented at trial, Mark Chafin was the person responsible for the transactional processes and possession of the drugs that he placed into [appellant's] car." (July 23, 2020 Mot. for Leave at 6.) According to appellant, Chafin, who was now deceased, did not testify because "detectives had harassed his 73-year-old mother, and he did not want to immediately go to jail following his testimony admitting sole responsibility." (July 23, 2020 Mot. for Leave at 6-7.) Appellant asserted that affidavits attached to his motion constituted newly discovered evidence.

{¶ 14} Attached to the motion were affidavits from Chafin (exhibit A), appellant (exhibit B), David Coates (exhibit C), Shawn Pryor (exhibit D), and Jeffrey Malloy (exhibit E). In Chafin's affidavit, dated September 28, 2018, he asserted that "[d]uring the summer of 2016, I was waiting for auto parts shipment that also contained drugs to arrive that I ordered." (Chafin Aff. at ¶ 1.) According to Chafin, appellant "had no knowledge of what the boxes contained." (Chafin Aff. at ¶ 1.) Chafin stated that after appellant was charged "for the drugs I placed in his trunk, I was subpoenaed to go to court to testify by [appellant's] attorney." (Chafin Aff. at ¶ 4.) Chafin further averred that, after he arrived at the courthouse, an assistant prosecutor "told me that if I went in the court and testified in [appellant's] behalf, I would be going to prison that day." (Chafin Aff. at ¶ 4.) Chafin also stated in his affidavit: "After I went to church recently and hearing people say we should confess our wrongs, I knew I had to do the right thing, even if it meant going to prison." (Chafin Aff. at ¶ 5.)

{¶ 15} Coates, appellant's son, stated in his affidavit that he sought the assistance "of a few attorneys who, after looking at [appellant's] case file, said they did not want to take the case because [the assistant prosecuting attorney] will go after them the way he went after Attorney Dennis W. McNamara by threatening to have Mr. McNamara indicted for perjury." (Coates Aff. at ¶ 3.)

{¶ 16} In his affidavit, Pryor averred that Columbus police officers, on August 20, 2015, conducted a search on Groves Road, Suite 35,"known at the time as The Speed Factory." According to Pryor, the Groves Road address was being utilized as a t-shirt printing company by Pryor, Pryor's son, and appellant's son.

{¶ 17} On August 3, 2020, plaintiff-appellee, State of Ohio, filed a memorandum contra appellant's motion for leave to file a delayed motion for new trial. In the accompanying memorandum in support, the state argued appellant failed to establish he was unavoidably prevented from discovering the evidence at issue. Specifically, the state argued appellant knew Chafin "well-before trial and even tried to call Chafin as a witness at trial," and thus the claim that Chafin ordered and received the drugs was "not 'newly discovered' evidence * * * but rather newly available evidence." (Aug. 3, 2020 Memo Contra at 10.) The state further argued appellant "knew of the search of his Groves Road business before trial, as well." (Aug. 3, 2020 Memo Contra at 10.) Finally, the state argued Chafin's

current affidavit contradicted an earlier affidavit of Chafin that appellant attempted to use at trial, and also contradicted the defense theory at trial that Chafin did not know there were drugs in the boxes.

**{¶ 18}** On August 10, 2020, the trial court filed a decision and entry denying appellant's motion for leave to file a delayed motion for new trial. On September 18, 2020, appellant filed a notice of appeal from the trial court's entry of August 10, 2020. By entry filed October 7, 2020, this court dismissed appellant's appeal as untimely.

**{¶ 19}** On September 14, 2021, appellant filed a second motion for leave to file a delayed motion for new trial, asserting newly discovered evidence pursuant to Crim.R. 33(A)(6). In the accompanying memorandum in support, appellant argued that, although the assistant prosecuting attorney "literally threatened to get [appellant's] trial attorney, Dennis W. McNamara, indicted had McNamara provided exculpatory evidence," appellant "was not aware until May 2021 that [the assistant prosecuting attorney] actually filed a grievance with the disciplinary counsel." (Sept. 14, 2021 Mot. for Leave at 5.) Appellant further asserted that "[u]ntil May 2021, [he] was not aware that Mr. McNamara was so rattled by [the assistant prosecuting attorney's] intimidation tactics that not presenting the content of an exculpatory affidavit caused [appellant] to lose his trial." (Sept. 14, 2021 Mot. for Leave at 5.) Attached to the motion were seven affidavits, five of which were attached to appellant's first motion for leave (i.e., affidavits from Chafin (exhibit B), Pryor (exhibit D), Malloy (exbibit E), appellant (exhibit F), and Coates (exhibit G)), as well as additional affidavits of McNamara (exhibit A) and "Minister" Norman V. Whiteside (exhibit C).

**{¶ 20}** In his affidavit, attorney McNamara averred that, after appellant was indicted, "I received an unsolicited sworn statement in the mail from Mark R. Chafin," and such statement "was clearly exculpatory as to [appellant]." (McNamara Aff. at ¶ 3-4.) McNamara further averred that in August 2016, "a number of lawyers were talking in a conference room on the fourth floor of the Franklin County Courthouse" and, during that conversation, the assistant prosecuting attorney "stated that if Mark Chafin was called as a witness at [appellant's] trial, he would indict Mr. Chafin for perjury and he would indict me for complicity to perjury." (McNamara Aff. at ¶ 5.) McNamara stated that in "late 2016," the assistant prosecuting attorney "filed a grievance against me with the Ohio Supreme Court's Disciplinary Counsel." (McNamara Aff. at ¶ 8.) Further, "[n]ow that [appellant] is

aware of [the assistant prosecuting attorney's] pretrial threat to indict me, and also aware of his post-trial grievance, * * * he believes that I provided ineffective assistance both at trial and on appeal." (McNamara Aff. at ¶ 10.)

{¶ 21} In his affidavit, dated April 9, 2021, Whiteside averred that in August 2018 he met with Chafin who told him that in 2015 "he was running drugs through an auto parts distribution place" and that "he often fooled people into believing he was stupid so that no one would suspect him of being behind his operations." According to Whiteside, Chafin stated "he wanted to testify and tell the truth" and that "the only reason he took the '5th' is that detectives had harassed his mother and caused him to believe they would do something to implicate her in his wrongdoings." Whiteside further averred that Chafin "passed [away] just before Christmas 2018."

{¶ 22} On November 22, 2021, the trial court filed a decision and entry denying appellant's motion for leave to file a delayed motion for new trial. In its decision, the trial court found appellant "failed to demonstrate by clear and convincing evidence that he was unavoidably prevented from filing his motion for a new trial within the time prescribed by law pursuant to Crim.R. 33." (Nov. 22, 2021 Decision & Entry at 1.) The court further found "the purported 'newly discovered evidence' proffered in [appellant's motion] fails to qualify as sufficient grounds for a new trial under Crim.R. 33(A) insofar as none of the information appears to be either 'newly discovered' or even 'evidence.' The allegation that [appellant's] trial counsel was 'rattled' by the assistant prosecutor's 'intimidation tactics' is not supported by [appellant's] own exhibit, in which trial counsel never claims to actually have been 'rattled', 'intimidated', or otherwise ineffective at trial." (Nov. 22, 2021 Decision & Entry at 1.) The trial court further found that appellant's motion and "attached exhibits merely attempt to re-introduce testimony that was ruled inadmissible at trial and relitigate issues previously addressed both on appeal * * * and [appellant's] earlier request for a new trial[.] * * * Such claims are barred by res judicata." (Nov. 22, 2021 Decision & Entry at 1-2.) Appellant did not file an appeal from the trial court's entry denying the September 14, 2021 motion for leave to file a delayed motion for new trial.

{¶ 23} On September 9, 2022, appellant filed a third motion for leave to file a delayed motion for new trial based on newly discovered evidence. Attached to the motion were the affidavits of Mark Chafin, Jr., and Calvin Smith. The motion further provided that

"all previous affidavits filed September 14, 2021 with Motion for Leave to File Delayed Motion for New Trial, are incorporated herein by reference and made a part hereof as though fully rewritten." (Sept. 9, 2022 Mot. for Leave at 1.) In the accompanying memorandum in support, appellant again asserted he was not aware "[u]ntil May 2021," that "McNamara was so rattled by [the assistant prosecuting attorney's] intimidation tactics * * * nor was he aware that during the time of his legal proceedings [the assistant prosecuting attorney] had filed a grievance with the disciplinary counsel that caused Mr. McNamara to provide inadequate representation to [appellant]." (Sept. 9, 2022 Mot. for Leave at 5.)

{¶ 24} The attached affidavit from Smith averred that, on August 12, 2015, he was sitting with Chafin, Jr. in a car on Chittenden Avenue when "Mark Chafin, Sr. put a karaoke machine in the car we were in and told Mark [Jr.] to follow him after the 'package' got there." Smith further averred that he and Chafin, Jr. subsequently followed appellant's car, but "we noticed the police coming from everywhere stopping [appellant's] car." Smith stated that, "a short time later" he "saw Mark, Sr. walking away from the scene * * * and then somehow came up behind us and told Mark, Jr., 'Take the machine to the spot and drive slowly.' " According to Smith, "Mark, Jr. asked him what was going on and Mark Sr. told him, 'They're taking Bub to jail because of my shit.' "

{¶ 25} In his affidavit, Mark Chafin, Jr. (hereafter "Chafin, Jr.") averred: "I know firsthand that Mr. James Smith is sitting in prison for drugs that belonged to my father, Mark Chafin, Sr. I have been concerned about coming forward because of the way the detectives harassed my grandmother and threatened to take her to jail and I believed that had they known what I know, I would have gone to jail as well." Chafin, Jr. stated he "knew my father had put drugs in my car and I knew that it was drugs he was putting in Smith's car." Chafin, Jr. further averred that "[b]efore my father died, he kept saying that it bothered him that he got Bub in trouble and he was going to try to clear him but he couldn't take care of my grandmother from in prison."

{¶ 26} On February 27, 2023, the trial court filed a decision and entry denying appellant's motion for leave to file a delayed motion for new trial. In its decision, the court noted that appellant, "[o]n September 14, 2021, * * * filed, almost word-for-word, the exact same motion." (Feb. 27, 2023 Decision & Entry at 1.) Specifically, the court found "[t]he

only discernable difference between [appellant's] current motion and his 2021 motion appears to be the addition of two affidavits attached as supporting documentation in his current motion[.] * * * The two affidavits, however, simply regurgitate the same information provided in [appellant's] 2021 motion." (Feb. 27, 2023 Decision & Entry at 1.)

{¶ 27} The trial court determined appellant "failed to demonstrate by clear and convincing evidence that he was unavoidably prevented from filing his motion for a new trial within the time prescribed by law pursuant to Crim.R. 33(B)." (Feb. 27, 2023 Decision & Entry at 1.) The court also found "the purported 'newly discovered evidence' proffered in [appellant's] Motion fails to qualify as sufficient grounds for a new trial under Crim.R. 33(A) insofar as none of the information appears to be either 'newly discovered' or even 'evidence.' " (Emphasis omitted.) (Feb. 27, 2023 Decision & Entry at 1-2.) Finally, the court held the motion and attached exhibits "merely attempt to re-introduce testimony that was ruled inadmissible at trial and relitigate issues previously addressed on appeal," and the court concluded that "[s]uch claims are barred by res judicata." (Feb. 27, 2023 Decision & Entry at 2.)

## II. Assignments of Error

{¶ 28} Appellant appeals and assigns the following two assignments of error for our review:

> [I.] The trial court abused its discretion and committed prejudicial error by applying the incorrect standard to motions for leave to file delayed motion for new trial in contravention of *State of Ohio v. Bethel*, Slip Opinion No. 2022-Ohio-783.
>
> [II.] The trial court abused its discretion and committed prejudicial error by not independently considering the information in the two affidavits attached to Appellant's motion for leave to file delayed motion for new trial.

## III. Analysis

{¶ 29} Under his first assignment of error, appellant argues the trial court erred in applying an incorrect standard when it found he "failed to demonstrate by clear and convincing evidence that he was unavoidably prevented from filing his motion for a new trial within the time prescribed by law pursuant to Crim.R. 33(B)." (Feb. 27, 2023 Decision & Entry at 1.) In support, appellant relies on the Supreme Court of Ohio's recent decision

in *State v. Bethel*, 167 Ohio St.3d 362, 2022-Ohio-783.  Appellant maintains the decision in *Bethel* "clarified" the following "two important matters": (1) there is "no 'reasonable-time filing requirement' under Crim.R. 33," and (2) the trial court cannot first decide a defendant's motion for new trial prior to consideration of the motion for leave to file the delayed motion for new trial.  (Appellant's Brief at 7.)

{¶ 30} A trial court's ruling on a motion for leave to file a motion for new trial "is reviewed for an abuse of discretion." *State v. McNeal*, 169 Ohio St.3d 47, 2022-Ohio-2703, ¶ 13.  *See also State v. Hatton*, 169 Ohio St.3d 446, 2022-Ohio-3991, ¶ 29 ("Appellate review of a trial court's ruling on a motion for leave to file a motion for a new trial is conducted under an abuse-of-discretion standard.").  Courts, however, " 'lack the discretion to make errors of law, particularly when the trial court's decision goes against the plain language of a statute or rule.' " *McNeal* at ¶ 13, quoting *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, ¶ 39.  Rather, questions of law are reviewed "de novo." *Id.*, citing *Johnson* at ¶ 38.

{¶ 31} Appellant sought leave to file a delayed motion for a new trial based on newly discovered evidence under Crim.R. 33(A)(6).  Pursuant to Crim.R. 33(A)(6), a new trial may be granted "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial."  Crim.R. 33(B) provides that a motion for new trial based on newly discovered evidence "shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived."  A defendant who fails to file a motion for new trial within the prescribed 120-day period "must seek leave from the trial court to file a delayed motion." *State v. Lundy*, 10th Dist. No. 19AP-505, 2020-Ohio-1585, ¶ 10, citing *State v. Berry*, 10th Dist. No. 06AP-803, 2007-Ohio-2244, ¶ 19.

{¶ 32} In order to "obtain such leave, a defendant must demonstrate by clear and convincing proof that he or she was unavoidably prevented from discovering the evidence upon which the motion is based within the 120-day timeframe." *Id.* at ¶ 11, citing Crim.R. 33(B); *Berry* at ¶ 19.  Under Ohio law, "[a] defendant is unavoidably prevented from discovering new evidence if he or she had no knowledge of the existence of the new evidence and, in the exercise of reasonable diligence, could not have learned of its existence within the time prescribed for filing a motion for new trial." *Id.*, citing *Berry* at ¶ 19, citing *State*

*v. Lee*, 10th Dist. No. 05AP-229, 2005-Ohio-6374, ¶ 7, and *State v. Walden*, 19 Ohio App.3d 141, 145-46 (10th Dist.1984).

{¶ 33} As noted, appellant contends the trial court applied an incorrect standard under *Bethel* in finding he "failed to demonstrate by clear and convincing evidence that he was unavoidably prevented from filing his motion for a new trial within the time prescribed by law pursuant to Crim.R. 33(B)." (Feb. 27, 2023 Decision & Entry at 1.) The basis for appellant's argument is the Supreme Court's admonition in *Bethel* that "Crim.R. 33(B) does not give a deadline by which a defendant must seek leave to file a motion for a new trial based on the discovery of new evidence." *Bethel* at ¶ 53.

{¶ 34} In addressing that portion of the holding in *Bethel*, this court recently observed: "In *Bethel,* the Supreme Court implicitly overruled previous appellate cases that had required that a motion for leave to file a delayed motion for new trial be filed 'within a reasonable time after the discovery of the new evidence,' finding that no such timing requirement exists in Crim.R. 33(B)." *State v. Sevilla*, 10th Dist. No. 22AP-764, 2023-Ohio-1726, ¶ 18, citing *Bethel* at ¶ 58. Thus, prior to *Bethel*, a number of appellate courts, including this court, had imposed a time requirement in addition to the 120-day period under Crim.R. 33(B) for filing a Crim.R. 33(A)(6) motion based on newly discovered evidence. *See, e.g.*, *State v. Armengau*, 10th Dist. No. 17AP-852, 2018-Ohio-4299, ¶ 3, citing *State v. Armengau*, 10th Dist. No. 16AP-355, 2017-Ohio-197, ¶ 14, 18 (pre-*Bethel* decision noting we had previously "denied appellant's motion for leave to file a delayed motion for new trial based on newly discovered evidence under Crim.R. 33(A)(6), finding that appellant failed to show [by clear and convincing evidence] he was unavoidably prevented from discovering [purported newly discovered] evidence within 120 days of the jury verdict as required by Crim.R. 33(B) *and that he further failed to file his motion for leave within a reasonable time after discovering [the] evidence*"). (Emphasis added.)

{¶ 35} In the present case, however, appellant fails to demonstrate the trial court applied an incorrect standard. Specifically, the trial court did not make a finding that appellant failed to file his motion for leave within a reasonable time after discovering the purported new evidence. Rather, as observed by the state, the trial court's finding that appellant challenges on appeal relate to a "still existing" requirement under Crim.R. 33(B), i.e., "the requirement that a defendant seeking to file a motion for new trial under Crim.R.

33(A)(6) more than 120 days after the verdict must present clear and convincing evidence that he was unavoidably prevented from discovering the new evidence within the 120-day window." (Appellee's Brief at 24-25.)

{¶ 36} Thus, the trial court's reference to the "time prescribed" by Crim.R. 33(B) does not stand in contravention to the holding in *Bethel. See, e.g., McNeal* at ¶ 16 (noting that Crim.R. 33(B) "excuses a defendant's failure to move for a new trial within the * * * 120-day deadline * * * if the defendant proves by clear and convincing evidence that he or she was unavoidably prevented from discovering the evidence * * * within that time" and that, upon such a showing, defendant must file his or her motion for new trial within 7 days of the court's finding the defendant was "unavoidably prevented from discovering the evidence within the time prescribed by Crim.R. 33(B)"); *State v. Martin*, 8th Dist. No. 110549, 2022-Ohio-1494, ¶ 25, citing *State v. Dues*, 8th Dist. No. 105388, 2017-Ohio-6983, ¶ 10, citing *State v. Mathis*, 134 Ohio App.3d 77, 79 (1st Dist.1999) (discussing holding in *Bethel* regarding error by appellate court in finding it was within trial court's decision to deny motion for leave based on failure to file motion within reasonable time after discovering new evidence, and further observing that "[o]ur focus shifts to whether, to obtain leave, [the appellant] has demonstrated 'by clear and convincing evidence that he was unavoidably prevented from discovering the new evidence within the 120-day time period' ").

{¶ 37} Appellant cites to another portion of the *Bethel* holding in arguing error by the trial court. Specifically, appellant notes the Supreme Court in *Bethel* observed that "until a trial court grants leave to file a motion for a new trial, the motion for a new trial is not properly before the court." *Bethel* at ¶ 41. The Supreme Court's observation was prompted by the fact the trial court in that case had "denied Bethel's motion for a new trial and then denied his motion for leave to file that motion." *Id.*

{¶ 38} Again, however, appellant fails to show the trial court applied an incorrect standard in the present case. Here, unlike the facts in *Bethel*, appellant did not file a motion for new trial at the same time he filed his motion for leave to file a motion for new trial, and the trial court did not purport to rule on the merits of a motion for new trial in denying appellant's motion for leave.

{¶ 39} Accordingly, having failed to show the trial court applied an incorrect standard under *Bethel* in addressing appellant's motion for leave to file a delayed motion for new trial, appellant's first assignment of error is not well-taken and is overruled.

{¶ 40} Under his second assignment of error, appellant contends the trial court denied the motion for leave without conducting a "meaningful review" of the two new affidavits filed in his latest motion for leave. (Appellant's Brief at 9.) Appellant maintains none of the affidavits in the two prior motions for leave contained the "specific information" provided by "Chafin, Jr. and Calvin Smith." (Appellant's Brief at 9.)

{¶ 41} At the outset, we note the trial court relied on several alternative grounds for denying appellant's motion for leave. First, as noted above, the trial court found appellant "failed to demonstrate by clear and convincing evidence that he was unavoidably prevented from filing his motion for a new trial within the time prescribed * * * pursuant to Crim.R. 33(B)." (Feb. 27, 2023 Decision & Entry at 1.) Second, the court found "the purported 'newly discovered evidence' proffered in [appellant's motion] fails to qualify as sufficient grounds for a new trial under Crim.R. 33(A) insofar as none of the information appears to be either 'newly discovered' or even 'evidence.' " (Feb. 27, 2023 Decision & Entry at 1-2.) Finally, the trial court found the claims "are barred by res judicata." (Feb. 27, 2023 Decision & Entry at 2.)

{¶ 42} As noted above, a defendant is unavoidably prevented from discovering new evidence if he had "no knowledge of the existence of the new evidence and, in the exercise of reasonable diligence, could not have learned of its existence within the time prescribed for filing a motion for new trial." *Lundy* at ¶ 11. In this respect, a defendant has "an obligation to exercise reasonable diligence to discover the alleged 'new' evidence." *State v. Dodson*, 10th Dist. No. 22AP-388, 2023-Ohio-701, ¶ 22, citing *State v. Cashin*, 10th Dist. No. 17AP-338, 2017-Ohio-9289, ¶ 16. Further, " '[g]iven the defendant's obligation to exercise reasonable diligence, the defendant cannot claim that evidence was undiscoverable simply because no one made efforts to obtain the evidence sooner.' " *Id.*, quoting *Cashin* at ¶ 16, citing *State v. Graggs*, 10th Dist. No. 16AP-611, 2017-Ohio-4454, ¶ 15. Thus, " 'a defendant cannot demonstrate that he was unavoidably prevented from discovering new evidence when he could have discovered that evidence earlier had he exercised reasonable

diligence and effort.' " *Id.*, quoting *Cashin* at ¶ 16, citing *State v. Lenoir*, 2d Dist. No. 26846, 2016-Ohio-4981, ¶ 24.

{¶ 43} Ohio courts, including this court, have held that "[d]efendants and their trial counsel have a 'duty to make a "serious effort" of their own to discover potential favorable evidence.' " *Sevilla* at ¶ 13, quoting *State v. Anderson*, 10th Dist. No. 12AP-133, 2012-Ohio-4733, ¶ 14, citing *State v. Golden*, 10th Dist. No. 09AP-1004, 2010-Ohio-4438, ¶ 15. Thus, " '[b]ald assertions that appellant could not have timely discovered the evidence is not enough.' " *Id.*, quoting *Anderson* at ¶ 14, citing *Golden* at ¶ 15. This court has also held: " 'To allow the trial court to gauge the defendant's diligence, the defendant must describe all investigative actions undertaken within the 120-day period for timely filing a Crim.R. 33(A)(6) motion and explain why he was unavoidably prevented from discovering the evidence before the 120-day period elapsed.' " *Id.* at ¶ 14, quoting *Cashin* at ¶ 17. Accordingly, " '[m]ere conclusory allegations do not prove that the defendant was unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.' " (Citations omitted.) *Id.*

{¶ 44} In support of his motion for leave, appellant submitted nine affidavits, including seven affidavits previously filed in his 2021 motion for leave to file a motion for new trial (incorporated by reference), as well as two new affidavits submitted by Smith and Chafin, Jr., respectively. In their affidavits, Smith and Chafin, Jr. related that, on August 12, 2015, they were both present (i.e., sitting together in a car) when the undercover agent delivered the package to the porch, and they observed the delivery. In his affidavit, dated May 6, 2022, Chafin, Jr. averred in part: "I knew that my father [Mark Chafin] had put drugs in my car and I knew that it was drugs he was putting in Smith's car, but he told everybody else that they were auto parts." (Chafin, Jr. Aff.)

{¶ 45} As set forth under the facts, appellant was aware of Chafin, Sr. prior to trial; in this respect, appellant's defense at trial was that the drugs in question did not belong to him, and for that reason defense counsel sought to introduce the testimony and affidavit of Chafin, Sr. regarding his purported role in the FedEx package that arrived at the Chittenden Avenue residence. In the two new affidavits filed with appellant's third motion for leave, both affiants purport to have witnessed the events at issue. However, as noted by the state,

appellant made no argument in his motion or attached materials that these two witnesses, who included Mark Chafin's son, were not known to appellant prior to trial.

{¶ 46} This court has held that "a defendant is not unavoidably prevented from discovering an exculpatory witness when the defense knew or should have known of the witness prior to the trial." *State v. Dunkle*, 10th Dist. No. 19AP-820, 2021-Ohio-1035, ¶ 19, citing *State v. Ambartsoumov*, 10th Dist. No. 12AP-878, 2013-Ohio-3011, ¶ 21-30. In *Ambartsoumov*, "we noted that '[o]ther Ohio courts have similarly held that a defendant was not "unavoidably prevented from discovering the evidence" where the witnesses were known to the defense prior to trial.' " *Id.*, quoting *Ambartsoumov* at ¶ 22.

{¶ 47} Significantly, appellant's latest motion for leave offered no explanation as to what investigative actions he took regarding these potential witnesses prior to trial or within the 120-day window. We have consistently held that a trial court does not abuse its discretion in denying a motion for leave to file a motion for new trial where the appellant "does not explain any investigative actions taken before trial or within the 120-day time frame set forth in Crim.R. 33(B), and further fails to explain why he was unavoidably prevented from discovering the allegedly new evidence upon which he relies as the basis for his motion for leave." *Dodson* at ¶ 24. *See also Cashin* at ¶ 22 (trial court did not err in denying motion for leave where appellant "failed to produce any evidence regarding his efforts to obtain" affidavits of witnesses in order to "establish that he exercised reasonable diligence to overcome the witnesses' unwillingness before the 120-day period elapsed"); *Sevilla* at ¶ 16-17 (the appellant "made no attempt to explain why it took 16 years for him to obtain the affidavits, or even how he obtained them," and documents in support of motion for leave "did not establish that appellant was unavoidably prevented from obtaining the evidence set forth in the affidavits within 120 days after the jury's verdict").

{¶ 48} Further, while incorporating by reference affidavits previously filed with his second motion for leave, appellant did not support his third motion for leave with his own affidavit "attesting to the circumstances of securing" the affidavits of Chafin, Jr. and Smith. *State v. Smith*, 1st Dist. No. C-190485, 2020-Ohio-6718, ¶ 18-19 (noting the appellant did not support his motion for leave with his own affidavit attesting to circumstances regarding the making of recanting witness's affidavit, nor did witness's affidavit speak to such circumstances, and therefore the motion for leave did not provide evidence demonstrating

"unavoidable prevention"). Appellant's mere conclusory statement in his motion for leave that he was "unaware of the information stated in the attached affidavits," is insufficient to show he was unavoidably prevented from discovering the evidence he now seeks to rely on. (Sept. 9, 2022 Mot. for Leave at 5.) *See Cashin* at ¶ 21 (the appellant's statement that "he did everything possible to obtain the witnesses' testimony is a conclusory allegation devoid of the detail needed to determine whether [he] exercised reasonable diligence"). Rather, "[t]here is a material difference between being unaware of certain information and being unavoidably prevented from discovering that information." *State v. Warwick*, 2d Dist. No. 01CA33, 2002-Ohio-3649, ¶ 19.

{¶ 49} Here, having "failed to produce any evidence regarding his efforts to obtain the witnesses' affidavits," appellant "cannot establish that he exercised reasonable diligence to overcome the witnesses' unwillingness before the 120-day period lapsed." *Cashin* at ¶ 22. Based on the record presented, we conclude the trial court did not err in finding appellant failed to demonstrate, by clear and convincing evidence, that he was unavoidably prevented from discovering the evidence upon which he relies within the time prescribed by Crim.R. 33(B). Accordingly, the trial court did not abuse its discretion in denying appellant's motion for leave to file a delayed motion for new trial.

{¶ 50} Appellant's second assignment of error is not well-taken and is overruled.

## IV. Conclusion

{¶ 51} Based on the foregoing, appellant's two assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

LUPER SCHUSTER and EDELSTEIN, JJ., concur.

————————————